# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMBROSE O. ESOGBUE,** | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 06-1895 (RMC) |
| | ) |
| **DEPARTMENT OF HOMELAND SECURITY,** *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## FEDERAL DEFENDANTS' MOTION TO DISMISS COMPLAINT WITH PREJUDICE OR, IN THE ALTERNATIVE, TO TRANSFER TO THE WESTERN DISTRICT OF LOUISIANA

Federal Defendants, Department of Homeland Security, and Bureau of Immigration and Customs Enforcement ("ICE"), by its undersigned attorneys, respectfully move the Court for dismissal of all claims, pursuant to Rule 12(b)(1), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure, for lack of jurisdiction, improper venue and failure to state a claim upon which relief can be granted.  Alternatively, defendants ask the Court for an order transferring this case to the United States District Court for the Western District of Louisiana.  In support of this Motion, the Court is referred to the accompanying Memorandum of Points and Authorities, supporting Exhibits, and proposed Order attached hereto.

Plaintiff should take notice that any factual assertions contained in the attached Memorandum in Support of this Motion and supporting exhibits may be accepted by the Court as true unless the plaintiff submits his own affidavit or other documentary evidence contradicting the assertions therein.  *See Neal v. Kelly*, 963 F.2d 453 (D.C. Cir. 1992).

Furthermore, should this Court treat defendants' Motion to Dismiss as a motion for summary judgment, because of the attached exhibits, the Federal Rules of Civil Procedure provide:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); *see Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988) ( *pro se* party may lose if he fails to respond to a dispositive motion); Local Rule 56.1 ("the court may assume that facts identified by the moving party in its statement of facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion").

<div align="center">

Respectfully  submitted,

    Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

    Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

    s/Sherease Louis
SHEREASE LOUIS
Special Assistant United States Attorney
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0895

</div>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **AMBROSE O. ESOGBUE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 06-1895 (RMC) |
| | ) | |
| **DEPARTMENT OF HOMELAND SECURITY, *et al*.,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**FEDERAL DEFENDANTS' STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

The federal defendants submit the following statement of material facts as to which there

is no genuine issue in accordance with Local Rule 7h:

1.      On August 27, 2005, officials in Plaquemines Parish, Louisiana ordered a

mandatory emergency evacuation as Hurricane Katrina approached the Gulf Coast.  Compl. p. 2,

¶ 2.

2.      Through an Intergovernmental Service Agreement for Housing Federal Detainees

("IGSA"), ICE contracts with Plaquemines Parish Detention Center, a private contractor, for the

detention and care of persons detained under the authority of the Immigration and Nationality

Act.  (Def. Ex. 1).

3.      Plaintiff Ambrose O. Esogbue, a citizen of Nigeria, resided at the Plaquemines

Detention Center, and was evacuated from the Plaquemines Detention Center on August 27,

2005.  Compl. p.2,  ¶¶  2,3.

4.      Under the contract, Plaquemines Detention Center was responsible for the daily

operations at the facilities, including basic care, transportation services, and emergency

evacuation of the federal detainees.  (Def. Ex.1), Article III, IV.

5.      Plaintiff's loss of property occurred in the Plaquemines Detention Center. Compl. p.3 ¶¶ 3, 4.

6.      In a letter dated February 6, 2006, plaintiff submitted a copy of his tort claim for loss of property to the United States Department of Justice, Civil Division, Torts Branch.   (Def. Ex. 2).

7.      On February 22, 2006, the United States Department of Justice, Civil Division, Torts Branch, Federal Torts Claims Staff "FTCAS" received plaintiffs' administrative tort claim, dated November 1, 2005.  (Def. Ex. 3).

8.      In a letter dated March 2, 2006, the FTCAS informed plaintiff that FTCAS was forwarding plaintiff's claim to ICE.    (Def. Ex. 4).

9.      In a letter dated March 2, 2006, the FTCAS forwarded plaintiff's administrative claim to ICE. (Def. Ex.5).

10.     On April 25, 2006, ICE sent via certified mail, return receipt requested, a final agency denial of plaintiff's claim to Ambrose O. Esogbue, FDC Oakdale, Federal Detention Center, P.O. Box 5010, Oakdale, LA 71463.  The return receipt was signed on May 1, 2006. (Def. Ex. 6).

11.     In a letter dated April 28, 2006, plaintiff requested that ICE "settle this claim within ten (10) business days of your receipt.  My failure to receive an acceptable response from you, would leave me with no choice but to pursue the legal remedy available to me."  (Def. Ex. 7).

12.     Plaintiff's complaint was filed on November 7, 2006.

13.     Plaintiff's complaint was filed more than six months after the final agency denial of plaintiff's claim.

2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **AMBROSE O. ESOGBUE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 06-1895 (RMC) |
| | ) | |
| **DEPARTMENT OF HOMELAND SECURITY,** *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS</u>

### <u>INTRODUCTION</u>

Plaintiff filed a civil action on November 7, 2006, against the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, <u>et seq</u>.  Plaintiff seeks $ 4,459.51, for loss of property that occurred as a result of Hurricane Katrina.

This Court, however, lacks jurisdiction to adjudicate plaintiff's claims, which were filed more than six months after plaintiff received the notice of the denial of his claim.  Plaintiff's action must also fail because the tort, if any, that caused the loss of property complained of was that of a contractor – not an employee – of the United States, or alternatively, was caused by flood or flood waters.  Accordingly, the Complaint should be dismissed.  Moreover, even if this action survives a motion to dismiss, the District of Columbia is an improper venue for actions that occurred solely and exclusively within the Western District of Louisiana.  Therefore, the matter should be transferred to that judicial district.

## STATEMENT OF FACTS

Plaintiff's claim arises from the mandatory evacuation of detainees from the Plaquemines Detention Center on August 27, 2005, prior to the arrival of Hurricane Katrina, and the subsequent flooding and destruction of property that occurred in Plaquemines Parish, Louisiana. Compl. p. 3. At all times relevant to the allegations in plaintiff's Complaint, ICE contracted with the Plaquemines Detention Center through an Intergovernmental Service Agreement for Housing Federal Detainees ("IGSA"). Under the terms of the contract, the Plaquemines Detention Center was responsible for the daily operations at the detention facilities, including basic care, transportation services, and emergency evacuation of the federal detainees. (Def. Ex. 1). Plaintiff, a detainee at the Plaquemines Detention Center in Plaquemines Parish, Louisiana, alleges that he lost property, including books, clothing, various food items, and a $60.00 money order, due to the Plaquemines Detention Center employees' refusal to allow him to take his personal possessions with him at the time of the emergency evacuation. Compl. p. 3. Plaintiff's administrative tort claim for loss of property, which plaintiff values at $4,459.51, was received by the United States Department of Justice, Civil Division, Torts Branch, Federal Torts Claims Staff ( "FTCAS") on February 21, 2007. By cover letter dated March 2, 2006, the FTCAS forwarded plaintiff's administrative tort claim to ICE. Def Ex. 5. ICE denied the FTCA administrative claim in a letter dated April 26, 2006. (Def. Ex. 6). The agency's denial letter was sent to plaintiff by certified mail, return receipt requested, and the mail receipt was signed on May 1, 2006. (Def Ex.6). In a letter dated April 28, 2006, plaintiff requested that ICE "settle this claim within ten (10) business days of your receipt. My failure to receive an acceptable response from you, would leave me with no choice but to pursue the legal remedy available to me." (Def. Ex. 7). Plaintiff subsequently brought suit on November 7, 2006, under the FTCA.

2

Plaintiff's Complaint 1) was not filed within six months of the notice of the denial of his claim, 2) was filed in an improper venue, and 3) fails to state a claim upon which relief can be granted.

## ARGUMENT

### I.    The Standard of Review for a Motion to Dismiss

Federal defendants move for dismissal of plaintiff's Complaint pursuant to Federal Rule Civil Procedure 12(b)(1), 12(b)(3) and 12(b)(6), for lack of subject matter jurisdiction, improper venue, and failure to state a claim upon which relief can be granted.

#### A.    Lack of Subject Matter Jurisdiction

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *District of Columbia Ret. Bd. v. United States*, 657 F. Supp. 428, 431 (D.D.C. 1987).  In considering a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all material factual allegations in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), vacated on other grounds, 482 U.S. 64 (1987).  A court may also consider materials outside the pleadings as appropriate to resolve the question whether it has jurisdiction to hear the case. *Herbert v. Nat'l Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987); *Borg-Warner Protective Servs. Corp. v. EEOC*, 81 F. Supp. 2d 20, 23 (D.D.C. 2000).

#### B.    Improper Venue

Under the FTCA, venue for tort claims is governed by 28 U.S.C. § 1402(b), which provides only two bases for venue: (1) "where the plaintiff resides," or (2) "wherein the act or

omission complained of occurred." 28 U.S.C. § 1402(b).[1]  According to the Complaint, plaintiff

resides in Louisiana, and the loss of property about which plaintiff complains occurred in

Louisiana.  Compl. p. 2, ¶ 1, p. 3.  Therefore, there is no basis for venue in the District of

Columbia under the applicable venue provision.[2]  *See Bryant v. Carlson*, 652 F. Supp. 1286,

1287 (D.D.C. 1987); *Bartel v. Federal Aviation Admin.*, 617 F. Supp. 190, 198-99 (D.D.C.

1985); *Mylan Laboratories, Inc. v. Akzo, N.V.,* 1990 WL 58466, *11 (D.D.C. 1990).

Consequently, plaintiff's FTCA claim should be dismissed under Rule 12(b)(3) for improper

venue.

### C.      Failure to State a Claim

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint and dismissal is

appropriate where the "plaintiff can prove no set of facts in support of his claim which would

-------------------------------------------------------------

[1]  Under 28 U.S.C. § 1346(b):

> Subject to the provisions of chapter 171 of [title 28] the district courts, together with the United States District Court for the District of the Canal Zone and the District of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on or after January 1, 1945, for injury or loss of personal property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government..."

[2]  Nor could plaintiff rely on the general venue provision applicable to cases brought against the government.  That statute provides in relevant part:

> (e) A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e).

entitle him to relief." *Browning v. Clinton*, 292 F.3d 235, 241 (D.C. Cir. 2002) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).  The Court is to treat the complaint's factual allegations as true, *see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993), and must grant plaintiff "the benefit of all inferences that can be derived from the facts alleged," *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir.1979).  However, "the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by the facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions." *Akintomide v. United States*, 99-MS-0055 (PLF), 2000 WL 1693739, at *1 (D.D.C. Oct. 31, 2000) (citing *National Treasury Employees Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996) and *Kowal v. MCI Communication Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  In deciding the motion, the court may consider additional evidence.  *See Arizmendi v. Lawson*, 914 F. Supp. 1157, 1160-61 (E.D. Pa. 1996) ("In resolving a Rule 12(b)(6) motion to dismiss, a court may properly look beyond the complaint to matters of public record including court files, records and letters of official actions or decisions of government agencies and administrative bodies, documents referenced and incorporated in the complaint and documents referenced in the complaint or essential to a plaintiff's claim which are attached to a defendant's motion.").

The Court may grant a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  The Court accepts as true the complaint's factual allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985).

II.     **The Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if there is "no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); . *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  In deciding on a summary judgment motion, the fact-finder must draw inferences from the record in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255; *Celotex Corp.*, 477 U.S. at 330.

There is no genuine issue of material fact if the relevant evidence, taken as a whole, indicates that a reasonable fact-finder could not return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).  Mere allegations or denials in the non-moving parties' pleadings are insufficient to defeat an otherwise proper motion for summary judgment.  *Matsushita*, 475 U.S. at 586.  Where the evidence is merely colorable or is not significantly probative, summary judgment may be granted.  <u>Anderson</u>, 477 U.S. at 249-50; *see also Aka v. Washington Hospital Center*, 156 F.3d 1284, 1294 (D.C. Cir. 1998).  Where the factual context renders his position implausible, the party opposing summary judgment must come forward with strong persuasive evidence to defeat it.  *Matsushita*, 475 U.S. at 587.

## III.    The FTCA

### A.    Plaintiff's FTCA Claim is Barred By the Statute of Limitations

Pursuant to 28 U.S.C. §2401(b), "a tort claim against the United States shall be forever barred unless . . . action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." Statutes of limitations "represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.'" *Kubrick*, 444 U.S. at 117, *quoting Order of Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349 (1944). The limitations provision of Section 2401(b), "is the balance struck by Congress in the context of tort claims against the Government; and we are not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims." *Kubrick*, 444 U.S. at 117.

Plaintiff alleges he presented his administrative claim in writing on or about October 25, 2005, approximately two months after the evacuation and subsequent loss of property. Compl. p. 3. This claim was forwarded to ICE on March 2, 2006, (Def. Ex. 4, 5) and was denied in writing by ICE on April 25, 2006. Def. Ex. 6. Included in ICE's denial letter was the statement: "[i]f you wish to file suit against the United States to recover any alleged damages or expenses incurred, pursuant to 28 U.S.C.   2401(b) you must do so in the appropriate United States District Court no later than six months after the date of mailing of this letter." (Def. Ex. 6) (emphasis supplied). This language comports with that required under the FTCA. See 28 C.F.R. §14.9(a); *cf Dyniewicz v. United States*, 742 F.2d 484, 486  (9th Cir. 1984)(letter did not comport with 28 C.F.R. § 14.9(a)).

7

The ICE denial letter was sent by certified mail, return receipt, to Ambrose O. Esogbue, FDC Oakdale, Federal Detention Center, P.O. Box 5010, Oakdale, LA 71463.  Def. Ex. 6. Plaintiff acknowledged that his letter had been forwarded to ICE and, in a letter dated April 28, 2006, plaintiff requested that ICE "settle this claim within ten (10) business days of your receipt. My failure to receive an acceptable response from you, would leave me with no choice but to pursue the legal remedy available to me."  (Def. Ex. 7).  Plaintiff did not file his complaint until November 7, 2006.

Plaintiff's complaint is untimely.  The FTCA administrative tort claim was denied by this office on April 26, 2006 and the complaint was filed in the U.S. District Court on November 7, 2006.  The claimant must bring suit within six months after the date of the mailing of the agency's notice of that denial or the claim will be barred regardless of whether the claim was timely presented to the agency.  28 U.S.C. § 2401(b); *Schuler v. United States,* 628 F.2d 199, 202 (U.S. App. D.C. 1980). Because plaintiff failed to meet the jurisdictional requirements of the FTCA that an action be filed within six months after the date of mailing of the agency's final denial of the claim, this court lacks jurisdiction to consider the Complaint under the FTCA. Therefore, the Complaint should be dismissed.

### B.    FTCA's Limited Waiver of Sovereign Immunity

The FTCA extends liability to the federal government, to the same extant as any private party, for "personal injury or death caused by the negligent or wrongful act or omission of any federal employee of the government who is acting within the scope of their employment . . ." 28 U.S.C.§ 1346(b)(1); *see United States v. Orleans*, 425 U.S. 807, 813 (1976); *Cannon v. United States*, 645 F.2d 1128, 1133 (D.C.Cir. 1981).  Congress, by enacting the FTCA, established a limited waiver of the United States' immunity from suit for the torts of government employees.

*See* 28 U.S.C. §§ 1346(b), 2671-2680.  For claims within this limited waiver, Congress intended to permit liability based on the intentionally wrongful or careless conduct of Government employees, for which the Government was to be made liable according to state law under the doctrine of *respondeat superior*.  *Larid v. Nelms*, 406 U.S. 797, 801 (1972).  Thus, the alleged tortfeasor's status as "employee of the Government" is a *sine qua non* of liability under the FTCA.[3]  *See Sheridan v. United States*, 487 U.S. 392, 400 (1988).  This waiver of sovereign immunity is strictly construed in favor of the United States and should not be extended beyond the intent of Congress.  *United States v. Kubrick*, 444 U.S. 111, 117 (1979); *Soriano v. United States*, 352 U.S. 270, 276 (1957); *Berkman v. United States*, 957 F.2d 108 (4th Cir. 1992).

C.    **The Federal Government Has No Liability Under the FTCA for the Torts of Independent Contractors**

While the FTCA's limited waiver of immunity from suit extends to the torts of government employees, it does not extend to the torts of any individual who contracts with the United States.  28 U.S.C.A. § 2671.  *See U.S. v. Orleans*, 425 U.S. 807, 814 (1976) (citing *Dalehite v. United States*, 346 U.S. 15, 30-31 (1953);  *Logue v. United States*, 412 U.S. 521, 531-32 (1973).  The FTCA defines the term "employee of the government" to include (1) officers or employees of any federal agency; (2) members of the military or naval forces of the United States; and (3) persons acting on behalf of a federal agency in an official capacity.  28 U.S.C. §2671.  The Supreme Court has held that, where the United States has "no authority to physically supervise the conduct of the jail's employees" on a daily basis, a state jail is an independent

---

[3]    It is well-settled that the issue of whether a particular person is an "employee of the Government" under the FTCA is a question of federal law.  See, e.g., *Jones v. Hadican*, 552 F.2d 249, 251 n. 4 (8th Cir. 1977); *Brucker v. United States*, 338 F.2d 427, 428 n. 2 (9th Cir. 1964)*; United States v. Hainline*, 315 F.2d 153, 156 (10th Cir. 1963).

contractor, not an agent or employee of the United States, for purposes of the FTCA. *Logue* at

527-8, 530; *U.S. v. Orleans* at 814-15; *Hockman v. United States*, 741 F.Supp. 5 (D.D.C. 1990);

*Rose v. Silver*, 394 A.2d 1368 (D.C. 1978). Subsequent decisions have reaffirmed the principal

that the United States will not be liable under the independent contractor exception of the FTCA

by virtue of entering contracts and demanding compliance with federal standards, unless the

United States actually supervises the "day-to-day operations" of the endeavor," *Williams v.*

*United States,* 50 F.3d 299, 306 (4th Cir. 1995), *citing*, *Logue*, 412 U.S. at 529.[4]

ICE contracts with Plaquemines Parish Detention Center for the detention and care of

persons detained under the authority of the Immigration and Nationality Act on a reimbursable

detention day basis. The Intergovernmental Service Agreement for Housing Federal Detainees

(IGSA) in effect between ICE and the Plaquemines Parish Detention Center ACB-I-H-0014 in

effect at the time of the evacuation provides as follows:

>Article IV. Receiving and Discharging Detainees:
>
>>D. <u>Emergency evacuation</u>. In the event of an emergency requiring
>>evacuation of the Facility, The Service Provider shall evacuate

---

[4] The federal courts have recognized this principle in holding that compliance with United States directives does not transmute an entity into an agent or employee of the United States. *See, e.g., Berkman v. United States,* 957 F.2d 108, 114-15 (4th Cir. 1992) (finding no liability on behalf of the United States under the independent contractor exception of the FTCA despite the fact that the United States demanded compliance with its standards and had the right to inspect the independent contractor's work); *Larson v. Empresas El Yunque, Inc.*, 812 F.2d 14, 16 (1st Cir.1986) (holding no governmental liability under the FTCA for the independent contractor exception because the responsible party was not a federal agent since it, not the united states, ran the daily routine, despite the fact that the United States "owned and controlled" the premises on which the challenged conduct occurred); *Kramer v. United States,* 843 F.Supp. 1066, 1069-72 (E.D. Va.1994)(holding the responsible party to be an independent contractor, not a federal agent or employee for purposes of the FTCA, even though the United States retained a significant role in implementing and supervising the activities leading to the plaintiff's injuries).

INS[5] detainees in the same manner, and with the same safeguards, as it employs for persons detained under the Service Provider's authority.  The Service Provider shall notify INS within two hours of such evacuation.

The IGSA also provides as follows:

Article XIV. Hold Harmless and Indemnification Provisions

B.  Federal Government held harmless.  The Service Provider shall save and hold harmless and indemnify federal government agencies to the extent allowed by law against any and all liability claims, and costs of whatsoever kind and nature for injury to or death of any person or persons and for loss or damage to any property occurring in connection with, or in any way incident to or arising out of the occupancy, use, service, operation or performance of work under the terms of this Agreement, resulting from the negligent acts or omissions of the Service Provider, or any employee, or agent of the Service Provider.

(Def. Ex. 1).   The IGSA in effect at the time of Hurricane Katrina is a comprehensive contractual instrument providing that the Plaquemines Parish Detention Center, ("service provider") was responsible for the bed space, basic needs, transport service and emergency evacuation of the federal administrative detainees.  (Def. Ex. 1, Article III, IV).  The contract falls squarely within the holdings of *Logue* and *Orleans* because the service provider is responsible for the daily operation of the premises and the United States neither supervised the employees of the facility nor controlled the maintenance of the premises at the time of the injury alleged in the claim.

In the instant case, there is no allegation that the United States controlled the detailed physical performance of the Paquemines Detention Center employees, nor that its day-to-day

---

[5] Effective March 1, 2003, the U.S. Immigration and Naturalization Service ceased to exist as a separate agency within the U.S. Department of Justice and its functions were transferred into three new agencies, all part of the U.S. Department of Homeland Security ("DHS").  INS's enforcement functions were transferred to the U.S. Immigration and Customs Enforcement ("ICE").  *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (codified at 6 U.S.C. 251).  The Executive Office of Immigration Review, including the immigration courts and appellate board, remained within the U.S. Department of Justice.

operations were supervised by the Federal government.  Rather, the loss of property that plaintiff

complains of occurred as a result of either the alleged tortious conduct of an independent

contractor, or as a result of Hurricane Katrina and the resulting flood.  Compl. p. 3.  The  United

States cannot be liable for the tortious conduct, if any, of an independent contractor.  *See United*

*States v. Orleans*, 425 U.S. 807, 815-16; *Logue* at 529-30; and *see Cannon* 645 F2d 1128, 1139-

40 (D.C. Cir. 1981).  Absent full compliance with the conditions placed upon waiver of

sovereign immunity, courts lack jurisdiction to entertain tort claims against the United States.

*GAF Corp*., 818 F.2d at 904 and n.86 (D.C. Cir. 1987).  It is well established that a claimant

bears the burden of alleging and demonstrating compliance with the requirements of the FTCA

before a district court can exercise jurisdiction over an FTCA claim.  *See In re Agent Orange*

*Products Lab. Litig*., 818 F.2d 210, 214 (2d Cir. 1987) ("The burden is on the plaintiff to both

plead and prove compliance with the [FTCA's] statutory requirements.  In the absence of such

compliance, a district court has no subject matter jurisdiction over the plaintiff's claim.").

Therefore, because the United States does not waive its sovereign immunity against suit,

plaintiff's civil action must be dismissed.  *Meyer v. Reno*, 911 F. Supp. 11 (D.D.C. 1996);

*Marshall v. Reno*, 915 F. Supp. 426 (D.D.C. 1996); *Deutsch v. Dep't of Justice*, 881 F. Supp. 49,

55 (D.D.C. 1995).

### D.    The United States is not Liable for Damages Resulting from Flood or Flood Waters

The United States is protected from liability by 33 U.S.C. § 702c which provides:

> No liability of any kind shall attach to or rest upon the United
> States for any damage from or by flood waters at any place."

33 U.S.C. § 702c.  It is well-settled that the United States is protected from liability for damages

caused by natural events, such as "floods or flood waters."  *Mocklin v. Orleans Levee Dist*., 877

F.2d 427, 429 (5ᵗʰ Cir. 1989)(finding no federal liability even in connection with flood control projects in which the government is involved) ; *Florida East Coast Ry. Co. V. U.S.*, 519 F.2d 1184, 1198-1199 (5ᵗʰ Cir. 1975) (dicta discussing no federal government liability for natural events). Accordingly, because plaintiff's claims are premised upon damage caused by flood waters, they must be dismissed.

## III.    Alternatively, This Case Should Be Transferred to the Western District of Louisiana.

For the "convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *See* 28 U.S.C. § 1404(a). A threshold question is whether the case could have been brought in the district to which transfer is sought. *See Stewart Organization v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 613 (1964)). The Court must engage in a case-by-case analysis and balance the private interests of the parties with public interests such as efficiency and fairness to decide if transfer is proper. *Id.* at 29. The moving party bears the burden to establish that it is proper to transfer the case. *See Trout Unlimited v. United States Dep't of Agriculture*, 944 F. Supp. 13, 16 (D.D.C. 1996) (citing *Air Line Pilots Ass'n v. Eastern Air Lines*, 672 F. Supp. 525, 526 (D.D.C. 1987) (citations omitted).

The private interests of the parties include: plaintiff's choice of forum, defendants' choice of forum, whether the claim arose elsewhere, convenience of the parties, convenience of the witnesses, and ease of access to sources of proof. *See Trout Unlimited*, 944 F. Supp. at 16 (citation omitted). The public interest considerations include: the transferee's familiarity with governing laws, relative congestion of the calendars of the potential transferee and transferor courts, and local interests in deciding local controversies at home. *Id*.

Plaintiff should have initially brought this case in the Western District of Louisiana. Venue is proper in the district where: (1) the defendant resides; (2) a substantial part of the events or omissions giving rise to the claim occurred; or (3) the plaintiff resides if no real property is involved in the action. *See* 28 U.S.C. § 1391(e). Here, plaintiff resides in the Western District of Louisiana, and the events or omissions giving rise to plaintiff's claim occurred in the Western District of Louisiana.

In sum, this case could have been brought in the district to which transfer is sought. While the Court must grant substantial deference to a plaintiff's choice of venue, this deference can be minimized. For example, plaintiff's choice of venue is afforded less deference if the forum is not the plaintiff's home forum. *See Shawnee Tribe v. United States*, 298 F.Supp. 2d 21, 24 (D.D.C. 2002) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)). Deference is also minimized if the plaintiff's choice has an inadequate nexus to the events in the case. Courts have held that there is an inadequate nexus if federal officials in Washington, D.C. were not involved in the decision-making process *See Shawnee Tribe v. United States*, 298 F. Supp.2d at 24 (citing *Trout Unlimited*, 944 F. Supp. at 17.) *See also Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 67-68 (D.D.C. 2003) (holding that plaintiff's choice of forum, Washington, D.C., deserved little deference where federal officials in Washington, D.C. did not play an "active or significant" role in the decision-making process.); *The Wilderness Society v. Babbitt*, 104 F. Supp. 2d 10, 13-15 (D.D.C. 2000) (ruling that plaintiffs' choice of forum deserves substantial deference because (1) the Secretary of Interior, a federal official in Washington, D.C., was directly involved in the decision-making as evidenced by (a) the Secretary had involvement in the decision that was far from "routine;" (b) the Secretary signed the record of decision in Washington, D.C.; and (c) the Secretary briefed the public on his decision in Washington, D.C., (2) the environmental issue's

14

national scope, and (3) plaintiff's ties to the District of Columbia).

Plaintiff's reason for choosing Washington, D.C. is unknown. However, this Court should grant little deference to Plaintiff's choice of forum for several reasons. As in *Shawnee Tribe*, the defendants are seeking transfer to plaintiff's home forum, the Western District of Louisiana. In addition, Washington, D.C. has an insufficient connection with the events of this case. The officials who actually physically evacuated the detainees, and informed the detainees of what they could take with them during the evacuation, are located in the Western District of Louisiana. Thus, the officials in Louisiana are most familiar with what happened during the mandatory evacuation due to Hurricane Katrina, and the circumstances that gave rise to plaintiff's tort claims for loss of property.

## Conclusion

For the foregoing reasons, this case should be dismissed or, alternatively, transferred to the Western District of Louisiana.

Dated: May 7, 2007                    Respectfully  submitted,

                        ___Jeffrey A. Taylor_____
                        JEFFREY A. TAYLOR, D.C. BAR # 498610
                        United States Attorney

                        ___Rudolph Contreras_____
                        RUDOLPH CONTRERAS, D.C. BAR #  434122
                        Assistant United States Attorney

                        ___s/Sherease Louis_____
                        SHEREASE LOUIS
                        Special Assistant United States Attorney
                        United States Attorney's Office
                        555 4th Street, N.W.
                        Washington, D.C. 20530
                        (202) 307-0895
                        sherease.louis@usdoj.gov

15

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMBROSE O. ESOGBUE,** | ) |
| | ) |
| Plaintiff, | ) |
| v. | )   Civil Action No. 06-1895 (RMC) |
| | ) |
| **DEPARTMENT OF HOMELAND SECURITY,** *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## Certificate of Service

I hereby certify that I caused a copy of the foregoing Motion to Dismiss, Memorandum of

Points and Authorities, supporting Exhibits, and proposed Order to be served upon *pro se*

plaintiff by first class mail addressed to:

**AMBROSE O. ESOGBUE**
c/o Mrs. Jill Esogbue
10947 East 61st Street S
Apartment # 1746
Tulsa, OK 74133

on this 7th day of May, 2007.

                                        Respectfully submitted,


                                         /s Sherease Louis
                                        SHEREASE LOUIS
                                        Special Assistant United States Attorney
                                        555 Fourth St., N.W.,
                                        Washington, D.C.  20530
                                        202-307-0895/ FAX 202-514-8780
                                        sherease.louis@usdoj.gov

**United States Department of Homeland Security**
Bureau of Immigration & Customs Enforcement

*Intergovernmental Service Agreement for Housing Federal Detainees*

| 1. Agreement Number<br>ACB-I-H-0014 | 2. Effective as of<br>1 DEC 2003 | 3. Modification Number<br>001 |
|---|---|---|

| 4. Issuing INS Office Address:<br><br>Department of Homeland Security<br>70 Kimball Avenue<br>South Burlington, VT 05403-6813<br><br>Contact Person: Ned R Ross<br>Phone: (802) 872-4102 | 5. City/County/State Government:<br><br>Plaquemines Parish Detention Center<br>110 Prison Road<br>Braithwaite, LA 70040<br><br>Contact Person: Anthony L. Smith, Chief of Ops<br>Phone: 985-333-5005  Fax: 985-333-5011 |
|---|---|

6. Description of Modification (EXCEPT AS SPECIFICALLY PROVIDED HEREIN, ALL TERMS AND CONDITIONS OF THE AGREEMENT IDENTIFIED IN BLOCK 1 REMAIN UNCHANGED): The purpose of this modification is to include (1) provisions for escort and transportation services, (2) provisions for box lunches (3) to make administrative changes including points of contact for off-site medical services. As a result, the following changes are made:

[A] Add the following as paragraph E to Article III captioned "Covered Services":
<u>Escort and Transportation services</u>. The Service Provider will provide, upon request and as mutually agreed upon, necessary escort and transportation services for BICE detainees to and from designated locations. Escort services will be required for escorting detainees for routine and emergency off-site medical services; escorting detainees to court hearings; escorting witnesses to the courtroom; ensuring secure custody of detainees during proceedings; and escorting and transporting detainees between various incarceration locations. Escort and transportation services shall be performed by qualified sworn law enforcement or correctional officer personnel employed by the Service Provider under its policies, procedures and authorities. BICE shall reimburse the Service Provider for any hourly expenses for guarding purposes if the Service Provider is required to provide such service at the rate of _$14.70_ per hour. When a vehicle owned by the Service Provider is used, the Service Provider shall be reimbursed at the rate of $.36/mile (36 cents/mile).

Continued on page 2

| Local Government <u>is not</u> required to sign this document | ☑ Local Government is required to sign this document and return _1_ copy(s) to the issuing office. |
|---|---|

7. Local Government:

| _signature_ | 9/06/03 | _Robert Hingle Jr. Sheriff_ |
|---|---|---|
| Signature | Date | Name and Title (Type or print) |

(For additional signatures, please attach another page)

8. Federal Government:

| _signature_ | 11/13/03 | ROGER E FREGEAU |
|---|---|---|
| Contracting Officer Signature | Date | Name (Type or print) |



All costs for escort and transportation services shall be listed separately on the monthly invoice. When utilizing BICE vehicles the Service Provider will be reimbursed for actual hours provided only. Service Provider shall maintain a transportation log documenting all transportation services (date, origin, destination, time, detainees name and A number, and officers names). A copy of the transportation log shall be attached to all invoices that contain charges for transportation services.

[B] Add the following as paragraph F to Article III captioned "Covered Services":
 Bag Lunches. The Service Provider agrees to provide U.S. Immigration and Customs Enforcement (ICE) detainees with bag lunches when detainees are transported during a meal period, or when released back to ICE custody. Bag lunches shall consist of contents described in the ICE Detention Standards. Reimbursement for meals will be at the rate of $2.00 per bag lunch. Provider is to invoice ICE for services rendered as a separate line item on all invoices that contain bag lunch charges.

[C] Replace Article VI captioned "Medical Services" in its entirety with the following:

### Article VI. Medical Services

A. Auspices of Health Authority. The Service Provider shall provide BICE detainees with on-site health care services under the control of a local government designated Health Authority. The Service Provider shall ensure equipment, supplies, and materials, as required by the Health Authority, are furnished to deliver health care on-site.

B. Level of Professionalism. The Service Provider shall ensure that all health care service providers utilized for BICE detainees hold current licenses, certifications, and/or registrations with the State and/or City where they are practicing. The Service Provider shall retain a registered nurse to provide health care and sick call coverage unless expressly stated otherwise in this Agreement. In the absence of a health care professional, non-health care personnel may refer detainees to health care resources based upon protocols developed by United States Public Health Service (USPHS) Division of Immigration Health Service (DIHS). Healthcare or health trained personnel may perform screenings.

C. Access to health care. The Service Provider shall ensure that on-site medical and health care coverage as defined below is available for all BICE detainees at the facility for at least eight (8) hours per day, seven (7) days per week. The Service Provider shall ensure that its employees solicit each detainee for health complaints and deliver the complaints in writing to the medical and health care staff. The Service Provider shall furnish the detainees instructions in his or her native language for gaining access to health care services as prescribed in Article III, Paragraph D.

D. On-site health care. The Service Provider shall furnish on-site health care under this Agreement. The Service Provider shall not charge any BICE detainee an additional fee or co-payment for medical services or treatment provided at the Service Provider's facility.
The Service Provider shall ensure that BICE detainees receive no lower level of on-site medical care and services than those it provides to local inmates. On-site health care services shall include arrival screening within 24 hours of arrival at the Facility, sick call coverage, provision of over-the-counter medications, treatment of minor injuries (e.g., lacerations, sprains, contusions), treatment of

special needs and mental health assessments. Detainees with chronic conditions shall receive prescribed treatment and follow-up care.

E. Arrival screening. Arrival screening shall include at a minimum TB symptom screening, planting of the Tuberculin Skin Test (PPD), and recording the history of past and present illnesses (mental and physical).

F. Unacceptable medical conditions. If the Service Provider determines that a BICE detainee has a medical condition which renders that person unacceptable for detention under this Agreement, (for example, contagious disease, condition needing life support, uncontrollable violence), the Service Provider shall notify BICE. Upon such notification the Service Provider shall allow BICE reasonable time to make the proper arrangements for further disposition of that detainee.

G. DIHS Pre-approval for non-emergent off-site care. The DIHS acts as the agent and final health authority for BICE on all off-site detainee medical and health related matters. The relationship of the DIHS to the detainee equals that of physician to patient. The Service Provider shall release any and all medical information for BICE detainees to the DIHS representatives upon request. The Service Provider shall solicit DIHS approval before proceeding with non-emergency, off-site medical care (e.g. prescription drugs, hospitals and clinics, off site lab testing, eyeglasses, cosmetic dental prosthetics, dental care for cosmetic purposes). The Service Provider shall submit supporting documentation for non-routine, off-site medical/health services to DIHS. For medical care provided outside the facility, the DIHS may determine that an alternative medical provider or institution is more cost-effective or more aptly meets the needs of BICE and the detainee. The BICE may refuse to reimburse the Service Provider for non-emergency medical costs incurred that were not pre-approved by the DIHS. The Service Provider shall send all requests for pre-approval for non-emergency off-site care to:

> Immigration Health Services
> Managed Care Program
> Fax: 202-318-0080
> Managed Care Coordinators: 1-888-718-8947

The Service Provider is to notify all medical providers approved to furnish off-site health care of detainees to submit their bills in accordance with instructions provided to:

> Immigration Health Services
> PMB 468
> 1220 L STREET N.W.
> Washington, DC 20005-4018
> Medical Claims Status Inquiry: 1-888-238-8163

More information is available at the PHS DIHS web site at:
http://inshealth.hrsa.gov/provider/provider.html

[D] Administrative Changes: The former Immigration and Naturalization Service (INS) assets have been merged into the Department of Homeland Security (DHS). Numerous sub-departments have been formed under the DHS. The Bureau of Immigration and Customs Enforcement (ICE) is the entity within DHS responsible for the detention of illegal aliens. Therefore, in each instance where Immigration and Naturalization Service or INS is mentioned, substitute Department of Homeland Security or DHS as appropriate.

**United States Department of Justice**
Immigration & Naturalization Service

*Intergovernmental Service Agreement for Housing Federal Detainees*

| 1. Agreement Number<br>ACB-1-H-0014 | 2. Effective as of date in block 11 | 3. Requisition Number (If applicable) |
|---|---|---|

| 4. Issuing INS Office Address:<br>Immigration & Naturalization Service<br>70 Kimball Avenue<br>South Burlington, VT 05403-6813<br><br><br>Contact Person: Roger E. Fregeau, Contracting Officer<br>Phone: (802) 872-4102 | 5. City/County/State Government:<br>Plaquemines Parish Detention Center<br>110 Prison Road<br>Braithwaite, LA 70040<br><br><br>Contact Person: Anthony L. Smith, Chief of Operations |
|---|---|

| 6. Services Covered by this Agreement:<br>Housing, security, subsistence, clothing and medical care of persons detained by the U.S. Immigration & Naturalization Service in accordance with the terms and conditions set forth herein. | 985-333-5805<br><br>FAX<br>985-3335811 | 19 |
|---|---|---|

9. Type of Detainee:  [X] Adult Male          [ ] Adult Female

10. City/County or State Government Certification:

*To the best of my (our) knowledge and belief, data submitted in support of this agreement is true and correct; this agreement has been duly authorized by the governing body of the city/county or state government identified in block 5 above. The city/county or state government identified shall comply with all provisions set forth herein.*

| (Signature) | 11/06/01<br>(Date) | I. F. Hingle, Jr., Sheriff<br>(Name & Title typed or printed) |
|---|---|---|
| (Signature) | (Date) | (Name & Title typed or printed) |
| (Signature) | (Date) | (Name & Title typed or printed) |
| (Signature) | (Date) | (Name & Title typed or printed) |

*(For additional signatures, please attach another page.)*

11. This agreement is hereby approved and accepted for THE UNITED STATES OF AMERICA, by direction of the COMMISSIONER OF THE IMMIGRATION & NATURALIZATION SERVICE.

| Roger E. Fregeau<br>(Contracting Officer Signature) | 11/8/01<br>(Date) | ROGER E FREGEAU<br>(Name typed or printed) |
|---|---|---|



**Department of Justice**
**Immigration and Naturalization Service**
*Intergovernmental Service Agreement for Housing Federal Detainees*

**Article I.  Purpose**

A.  Purpose.  The purpose of this Intergovernmental Service Agreement (IGSA) is to
establish an Agreement between the Immigration and Naturalization Service (INS), a
component of the Department of Justice, and a state or local government agency (*Service
Provider*) for the detention and care of persons detained under the authority of the
Immigration and Nationality Act, as amended.   The term "Parties" is used in this
Agreement to refer jointly to INS and the Service Provider.

B.  Responsibilities.  This Agreement sets forth the responsibilities of INS and the
Service Provider.  The Agreement states the services the Service Provider shall perform
satisfactorily to receive payment from INS at the prescribed rate.

C.  Guidance.  The Parties will determine the detainee day rate in accordance with OMB
Circular A-87, Cost Principles for State, Local, and Indian Tribal Governments
(Attachment A) and the INS Jail Services Cost Statement (Attachment B).

**Article II.  General**

A.  Funding.  The obligation of INS to make payments to the Service Provider is
contingent upon the availability of Federal funds.  The INS will, however, neither present
detainees to the Service Provider nor direct performance of any other services until the
INS has the appropriate funding.

B.  Subcontractors.  The Service Provider shall notify and obtain approval from the INS if
it intends to house INS detainees in a facility other than that specified on the cover page
of this document.  If either that facility, or any future one, is operated by an entity other
than the Service Provider, INS shall treat that entity as a subcontractor to the Service
Provider. The Service Provider shall ensure that any subcontract includes all provisions
of this Agreement, and shall provide INS with copies of all subcontracts in existence
during any part of the term of this Agreement.  The INS will not either accept invoices
from, or make payments to, a subcontractor.

C.  Consistent with law.  Any provision of this Agreement contrary to applicable
statutes, regulation, policies, or judicial mandates is null and void, but shall not
necessarily affect the balance of the Agreement.

1



**Department of Justice**
**Immigration and Naturalization Service**
*Intergovernmental Service Agreement for Housing Federal Detainees*

**Article III.  Covered Services**

A. Bed space.  The Service Provider shall provide male/female beds on a space available basis.  The Service Provider shall house all detainees as determined within the classification system.  The INS will be financially liable only for the actual detainee days as defined in Paragraph C. of this Article.

B. Basic needs.  The Service Provider shall provide adult INS detainees (gender as specified in Paragraph A. of this Article) with safekeeping, housing, subsistence, medical and other services in accordance with this Agreement. In providing these services, the Service Provider shall ensure compliance with all applicable laws, regulations, fire and safety codes, policies, and procedures. If the Service Provider determines that INS has delivered a person for custody who is under the age of 18, the Service Provider shall not house that person with adult detainees, and shall notify the INS immediately.  The types and levels of services shall be those the Service Provider routinely affords to other inmates.

C. Unit of service and financial liability.  The unit of service will be a "detainee day" (one person per day).  The detainee day begins on the date of arrival.   The Service Provider may bill INS for the date of arrival but not the date of departure.  For example: If a detainee is brought in at 1900 Sunday and is released at 0700 on Monday, the Service Provider may bill for 1 detainee day.  If a detainee is brought in at 0100, Sunday and is released at 2359 Monday, the Service Provider may bill for only 1 detainee day. The INS shall be responsible to pay for only those beds actually occupied.

D. Interpretive services.  The Service Provider shall make special provisions for non-English speaking, handicapped or illiterate detainees.  The INS will reimburse the Service Provider for any costs associated with providing commercial written or telephone language interpretive services, and upon request, will assist the Service Provider in obtaining translation services.  The Service Provider shall provide all instructions verbally (in English or the detainee's native language as appropriate) to detainees who cannot read. The Service Provider shall include the amount that the Service Provider paid for such services on their regular monthly invoice.  The Service Provider shall not use detainees for translation services, except in emergency situations.  If the Service Provider uses a detainee for translation service, it shall notify INS within 24 hours.



**Department of Justice**
**Immigration and Naturalization Service**
*Intergovernmental Service Agreement for Housing Federal Detainees*

### Article IV. Receiving and Discharging Detainees

A. <u>Required activity.</u>  The Service Provider shall receive and discharge detainees only from and to either properly identified INS personnel or other properly identified Federal law enforcement officials with prior authorization from INS.  Presentation of U.S. Government identification shall constitute proper identification.  The Service Provider shall furnish receiving and discharging services twenty-four (24) hours per day, seven (7) days a week.  The INS shall furnish the Service Provider with reasonable notice of receiving or discharging detainee(s).  The Service Provider shall ensure positive identification and recording of detainees and INS officers.  The Service Provider shall not permit medical or emergency discharges except through coordination with on-duty INS officers.

B. <u>Restricted release of detainees.</u>  The Service Provider shall not release INS detainees from its physical custody to any persons other than those described in Paragraph A of this Article for any reason, except for either medical, other emergent situations, or in response to a federal writ of *habeas corpus*.  If an INS detainee is sought for federal, state or local court proceedings, only INS may authorize release of the detainee for such purposes.  The Service Provider shall contact INS immediately regarding any such requests.

C. <u>Service Provider right of refusal.</u>  The Service Provider retains final and absolute right either to refuse acceptance, or request removal, of any detainee exhibiting violent or disruptive behavior, or of any detainee found to have a medical condition that requires medical care beyond the scope of the Service Provider's health provider.  In the case of a detainee already in custody, the Service Provider shall notify the INS and request such removals, and shall allow the INS reasonable time to make alternative arrangements for the detainee.

D. <u>Emergency evacuation.</u>  In the event of an emergency requiring evacuation of the Facility, the Service Provider shall evacuate INS detainees in the same manner, and with the same safeguards, as it employs for persons detained under the Service Provider's authority.  The Service Provider shall notify INS within two hours of such evacuation.

### Article V. Minimum Service Standards

The Service Provider shall:

A.  House INS detainees in a facility that complies with all applicable fire and safety codes as well as ensure continued compliance with those codes throughout the duration of the Agreement.

3



**Department of Justice**
**Immigration and Naturalization Service**
*Intergovernmental Service Agreement for Housing Federal Detainees*

B.  Provide guard personnel to ensure that there is a 24 hour visual supervision of detainees when housed in a dormitory type setting.  The Service Provider shall visually and physically check detainees in individual cells at least hourly.

C.  Segregate detainees in custody by gender and by risk of violence to other detainees.

D.  Provide a mattress, with a mattress cover, and when appropriate, a blanket to each detainee held overnight.

E.  Provide a minimum of three nutritionally balanced meals in each 24 hour period for each detainee.  These meals shall provide a total of at least 2,400 calories per 24 hours.  There will be no more than 14 hours or fewer than 4 hours between meals.  The Service Provider will provide a minimum of two hot meals in this 24 hour period.

F.  Provide medical services as described in Article VI below.

G.  Provide a mechanism for confidential communication between INS detainees and INS officials regarding their case status and custody issues.  The mechanism may be through electronic, telephonic, or written means, and shall ensure the confidentiality of the issue and the individual detainee.

H.  Afford INS detainees, indigent or not, reasonable access to public telephones for contact with attorneys, the courts, foreign consular personnel, family members and representatives of *pro bono* organizations.  (Attachment C)

I.  Permit INS detainees reasonable access to presentations by legal rights groups and groups recognized by INS consistent with good security and order.  (Attachment C)

J.  Afford each INS detainee with reasonable access to legal materials for his or her case.  The INS will provide the required materials.  The Service Provider will provide space to accommodate legal materials at no additional cost to INS.  (Note:  The INS may waive this requirement where the average length of detention is 30 days or less.)(Attachment C)

K.  Afford INS detainees reasonable visitation with legal counsel, foreign consular officers, family members, and representatives of *pro bono* organizations.  (Attachment C)

L.  Provide INS detainees with access to recreational programs and activities as described in the INS Recreation Standards (Attachment C) to the extent possible, under appropriate conditions of security and supervision to protect their safety and welfare.



**Department of Justice**
**Immigration and Naturalization Service**
*Intergovernmental Service Agreement for Housing Federal Detainees*

**Article VI.  Medical Services**

A.  Auspices of Health Authority.  The Service Provider shall provide INS detainees with onsite health care services under the control of a local government designated Health Authority. The Service Provider shall ensure equipment, supplies, and materials, as required by the Health Authority, are furnished to deliver health care on-site.

B.  Level of Professionalism.  The Service Provider shall ensure that all health care service providers utilized for INS detainees hold current licenses, certifications, and/or registrations with the State and/or City where they are practicing.  The Service Provider shall retain a registered nurse to provide health care and sick call coverage unless expressly stated otherwise in this Agreement.  In the absence of a health care professional, non-health care personnel may refer detainees to health care resources based upon protocols developed by United States Public Health Service (USPHS) Division of Immigration Health Service (DIHS).  Healthcare or health trained personnel may perform screenings.

C.  Access to health care.  The Service Provider shall ensure that on-site medical and health care coverage as defined below is available for all INS detainees at the facility for at least eight (8) hours per day, seven (7) days per week. The Service Provider shall ensure that its employees solicit each detainee for health complaints and deliver the complaints in writing to the medical and health care staff.  The Service Provider shall furnish the detainees instructions in his or her native language for gaining access to health care services as prescribed in Article III, Paragraph D.

D.  On-site health care. The Service Provider shall furnish onsite health care under this Agreement. The Service Provider shall not charge any INS detainee an additional fee or co-payment for medical services or treatment provided at the Service Provider's facility. The Service Provider shall ensure that INS detainees receive no lower level of on-site medical care and services than those it provides to local inmates. On-site health care services shall include arrival screening within 24 hours of arrival at the Facility, sick call coverage, provision of over-the-counter medications, treatment of minor injuries (e.g., lacerations, sprains, contusions), treatment of special needs and mental health assessments. Detainees with chronic conditions shall receive prescribed treatment and follow-up care.

E.  Arrival screening.  Arrival screening shall include at a minimum TB symptom screening, planting of the Tuberculin Skin Test (PPD), and recording the history of past and present illnesses (mental and physical).

5

 

**Department of Justice**
**Immigration and Naturalization Service**
*Intergovernmental Service Agreement for Housing Federal Detainees*

F.  Unacceptable medical conditions.  If the Service Provider determines that an INS detainee has a medical condition which renders that person unacceptable for detention under this Agreement, (for example, contagious disease, condition needing life support, uncontrollable violence), the Service Provider shall notify INS.  Upon such notification the Service Provider shall allow INS  reasonable time to make the proper arrangements for further disposition of that detainee.

G.  DIHS Pre-approval for non-emergent off-site care.  The DIHS acts as the agent and final health authority for INS on all off-site detainee medical and health related matters. The relationship of the DIHS to the detainee equals that of physician to patient. The Service Provider shall release any and all medical information for INS detainees to the DIHS representatives upon request. The Service Provider shall solicit DIHS approval before proceeding with non-emergency, off-site medical care (e.g. off site lab testing, eyeglasses, cosmetic dental prosthetics, dental care for cosmetic purposes). The Service Provider shall submit supporting documentation for non-routine, off-site medical/health services to DIHS. (See Attachment D.)  For medical care provided outside the facility, the DIHS may determine that an alternative medical provider or institution is more cost-effective or more aptly meets the needs of INS and the detainee. The INS may refuse to reimburse  the Service Provider for non-emergency medical costs incurred that were not pre-approved by the DIHS.  The Service Provider shall send all requests for pre-approval for non-emergent off-site care to:

> Joe Fink
> Managed Care Coordinator
> 1010 East Whatley Road
> Oakdale, LA  71463
> Phone:  (800) 942-9339
> Fax:  (800) 730-1123

The Service Provider is to notify all medical providers approved to furnish off-site health care of detainees to submit their bills in accordance with instructions provided to:

> UP & UP Health Services
> P.O. Box 10250
> Gaithersburg, MD  20898-0250
> Phone:  (888) 383-3922
> Fax:  (888) 383-3957

6

**Department of Justice**
**Immigration and Naturalization Service**
*Intergovernmental Service Agreement for Housing Federal Detainees*

H. <u>Emergency medical care</u>.  The Service Provider shall furnish 24 hour emergency medical care and emergency evacuation procedures.  In an emergency, the Service Provider shall obtain the medical treatment required to preserve the detainee's health. The Service Provider shall have access to an off site emergency medical provider at all times.  The Health Authority of the Service Provider shall notify the DIHS Managed Care Coordinator by calling the telephone number listed in paragraph G above as soon as possible, and in no case more than seventy-two hours after detainee receipt of such care. The Health Authority will obtain pre-authorization from the DIHS Managed Care Coordinator for service(s) beyond the initial emergency situation.

I. <u>Off-site guards</u>.  The Service Provider shall, without any additional charge to INS, provide guards during the initial 8 hours detainees are admitted to an outside medical facility.  If negotiated with INS, the Service Provider shall provide guards beyond the initial 8-hour period, at the regular hourly rate of those guards.  Absent such an arrangement, INS will be responsible for providing the guards at the end of the initial 8-hour period.  The Service Provider shall not, however, remove its guards until INS personnel relieve them.  The Service Provider shall submit a separate invoice for guard services beyond the initial 8 hours with its regular monthly billing.

J. <u>DIHS visits</u>.  The Service Provider shall allow DIHS Managed Care Coordinators reasonable access to its facility for the purpose of liaison activities with the Health Authority and associated Service Provider departments.

**Article VII.  No Employment of Unauthorized Aliens**

Subject to existing laws, regulations, Executive Orders, and addenda to this Agreement, the Service Provider shall not employ aliens unauthorized to work in the United States. Except for maintaining personal living areas, persons detained for INS shall not be required to perform manual labor.

**Article VIII.  Period of Performance**

This Agreement shall remain in effect indefinitely, or until terminated by either Party upon 60 days written notice, unless an emergency situation requires the immediate relocation of detainees, or the Parties agree to a shorter period under the procedures prescribed in Article X.

7

**Department of Justice**
**Immigration and Naturalization Service**
*Intergovernmental Service Agreement for Housing Federal Detainees*

**Article IX.  Inspection**

A.  Jail Agreement Inspection Report.  The Service Provider shall allow INS to conduct inspections of the facility, as required, to ensure an acceptable level of services and acceptable conditions of confinement as determined by the INS.  No notice to the Service Provider is required prior to an inspection.  The INS will conduct such inspections in accordance with the Jail Agreement Inspection Report a copy of which is included as Attachment E to this Agreement.  The Jail Inspection Report stipulates minimum requirements for fire/safety code compliance, supervision, segregation, sleeping utensils, meals, medical care, confidential communication, telephone access, legal counsel, legal library, visitation, and recreation.  The INS will share findings of the inspection with the Service Provider's facility administrator to promote improvements to facility operation, conditions of confinement, and level of service.

B.  Possible termination.  If the Service Provider fails to remedy deficient service INS identifies through inspection, INS may terminate this Agreement without regard to the provisions of Articles VIII and X.

C.  Share findings.  The Service Provider shall provide INS copies of facility inspections, reviews, examinations, and surveys performed by accreditation sources.

D.  Access to Detainee Records.  The Service Provider shall, upon request, grant INS access to any record in its possession (regardless of whether the Service Provider created the record) concerning any alien whom it has detained pursuant to this Agreement.  This right of access shall include, but not be limited to, incident reports, records relating to suicide attempts, and behavioral assessments and other records relating to the alien's behavior while in Service custody.  Furthermore, the Service Provider shall retain all records where this right of access applies.  The retention period will be at least two years from the date of the detainee's discharge from the Service Provider's custody.

**Article X.  Modifications and Disputes**

A.  Modifications.  Actions other than those designated in this Agreement will not bind or incur liability on behalf of either party.  Either party may request a modification to this agreement by submitting a written request to the other.  A modification will  become part of this Agreement only after the INS Regional Contracting Officer and the authorized signatory of the Service Provider have approved it in writing.

B.  Disputes.  The INS Regional Contracting Officer and the authorized signatory of the Service Provider are the parties to settle disputes, questions, and concerns arising from this Agreement.  Settlement of disputes shall be memorialized in a written modification between the INS Regional Contracting Officer and authorized signatory of the Service Provider.

8



Department of Justice
Immigration and Naturalization Service
*Intergovernmental Service Agreement for Housing Federal Detainees*

**Article XI.   Adjusting the Detainee Day Rate**

The INS shall reimburse the Service Provider at the detainee day rate shown on the cover page of this document.   The Parties may adjust that rate 12 months after the date of signing, and every 12 months thereafter. The Parties shall base the rate and adjustments on the principles set forth in OMB Circular A-87.  Such adjustments shall be effective on the first day of the month following execution of the modification.

**Article XII.  Enrollment, Invoicing, and Payment**

A.  Enrollment in electronic funds transfer.  The Service Provider shall provide the INS office with the information needed to make payment by electronic funds transfer (EFT). Since January 1, 1999, INS has made all payments only by EFT.  The Service Provider shall identify their financial institution and related information on Standard Form 3881, Automated Clearing House (ACH) Vendor/Miscellaneous Payment Enrollment Form, (Attachment F).  The Service Provider shall submit a completed SF 3881 to the INS payment office prior to submitting its initial request for payment under this Agreement. If the EFT data changes, the Service Provider shall be responsible for providing updated information to the INS payment office.

B.  Invoicing.  The Service Provider shall submit an original itemized invoice containing the following information: the name and address of the facility; the name of each INS detainee, his or her A-number, and his or her specific dates of detention; the total number of detainee days; the daily rate; the total detainee days multiplied by the daily rate ; an itemized listing of all other charges; and the name, title, address, and phone number of the local official responsible for invoice preparation. The Service Provider shall submit monthly invoices within the first ten working days of the month following the calendar month when it provided the services, to:

U.S. Immigration & Naturalization Service
New Orleans District Office
701 Loyola Avenue
ATTN: Deportation Unit
New Orleans, LA  70113-1912
Phone:  (504) 589-2804
Fax:  (504) 589-2661

C.  Payment.  The INS will transfer funds electronically through either an Automated Clearing House subject to the banking laws of the United States, or the Federal Reserve Wire Transfer System.  The Prompt Payment *Act* applies to this Agreement. The Act requires INS to make payments under this Agreement the 30th calendar day after the Deportation office receives a complete invoice. Either the date on the Government's check, or the date it executes an electronic transfer of funds, shall constitute the payment date.  The Act requires INS to pay interest on overdue payments to the Service Provider. The INS will determine any interest due in accordance with the Act.

9



**Department of Justice**
**Immigration and Naturalization Service**
*Intergovernmental Service Agreement for Housing Federal Detainees*

**Article XIII.  Government Furnished Property**

A.   Federal Property Furnished to the Service Provider.   The INS may furnish federal property and equipment to the Service Provider.  Accountable property remains titled to INS and shall be returned to the custody of INS upon termination of the agreement.  The suspension of use of bed space made available to INS is agreed to be grounds for the recall and return of any or all government furnished property.

B.   Service Provider Responsibility.   The Service Provider shall not remove INS property from the facility without the prior written approval of INS.  The Service Provider shall report any loss or destruction of such property immediately to INS.

**Article XIV.  Hold Harmless and Indemnification Provisions**

A.  Service Provider held harmless.  The INS shall, subject to the availability of funds, save and hold the Service Provider harmless and indemnify the Service Provider against any and all liability claims and costs of whatever kind and nature, for injury to or death of any person(s), or loss or damage to any property, which occurs in connection with or incident to performance of work under the terms of this Agreement, and which results from negligent acts or omissions of INS officers or employees, to the extent that INS would be liable for such negligent acts or omissions under the Federal Tort Claims Act, 28 USC 2691 *et seq.*

B.  Federal Government held harmless.  The Service Provider shall save and hold harmless and indemnify federal government agencies to the extent allowed by law against any and all liability claims, and costs of whatsoever kind and nature for injury to or death of any person or persons and for loss or damage to any property occurring in connection with, or in any way incident to or arising out of the occupancy, use, service, operation or performance of work under the terms of this Agreement, resulting from the negligent acts or omissions of the Service Provider, or any employee, or agent of the Service Provider.  In so agreeing, the Service Provider does not waive any defenses, immunities or limits of liability available to it under state or federal law.

C.  Defense of suit.  In the event a detainee files suit against the Service Provider contesting the legality of the detainee's incarceration and/or immigration/citizenship status, INS shall request that the U.S. Attorney's Office, as appropriate, move either to have the Service Provider dismissed from such suit, to have INS substituted as the proper party defendant, or to have the case removed to a court of proper jurisdiction.  Regardless of the decision on any such motion, INS shall request that the U.S. Attorney's Office be responsible for the defense of any suit on these grounds.



**Department of Justice**
**Immigration and Naturalization Service**
*Intergovernmental Service Agreement for Housing Federal Detainees*

D.  INS recovery right.  The Service Provider shall do nothing to prejudice INS' right to recover against third parties for any loss, destruction of, or damage to U.S. Government property.  Upon request of the Contracting Officer, the Service Provider shall, at the INS' expense, furnish to INS all reasonable assistance and cooperation, including assistance in the prosecution of suit and execution of the instruments of assignment in favor of INS in obtaining recovery.

## Article XV.  Financial Records

A.  Retention of records.  All financial records, supporting documents, statistical records, and other records pertinent to contracts or subordinate agreements under this Agreement shall be retained by the Service Provider for at least three years for purposes of federal examinations and audit.  The 3-year retention period begins at the end of the first year of completion of service under the Agreement.  If any litigation, claim, negotiation, audit, or other action involving the records has been started before the expiration of the 3-year period, the records must be retained until completion of the action and resolution of all issues which arise from it or until the end of the regular 3-year period, whichever is later.

B.  Access to records.  The INS and the Comptroller General of the United States, or any of their authorized representatives, shall have the right of access to any pertinent books, documents, papers or other records of the Service Provider or its sub-recipients.  Which are pertinent to the award, in order to make audits, examinations, excerpts, and transcripts.  The rights of access must not be limited to the required retention period, but shall last as long as the records are retained.

C.  Delinquent debt collection.   The INS will hold the Service Provider accountable for any overpayment, or any breach of this Agreement that results in a debt owed to the Federal Government.  The INS shall apply interest, penalties, and administrative costs to a delinquent debt owed to the Federal Government by the Service provider pursuant to the Debt Collection Improvement Act of 1982, as amended.

## Article XVI.  Provision of Space to INS and EOIR

A.  Service Provider responsibilities.  The Service Provider shall provide suitable support, office and administrative space, for use by INS.  As necessary, the Service Provider will provide sufficient safe and secure storage space for all INS detainee baggage.  In addition, the Service Provider agrees, if required, to furnish acceptable office and administrative space to the Executive Office of Immigration Review (EOIR).  The Service Provider shall bear all costs associated with the use of jail and office space by INS and EOIR (e.g. those for preparing, operating and maintaining such facilities for INS and EOIR, and incurred for temporarily relocating the Service Provider's employees).

11

The Service Provider shall equip the office and administrative space furnished to INS and EOIR with a telephone system compatible with the federal telephone network. The Service Provider shall furnish the security and janitorial services for this space. The Service Provider shall include all costs associated with providing space or services under this Paragraph in the calculation of the detainee rate day rate. (Note: the Service Provider shall have no obligation under this Paragraph unless the Parties negotiate specific terms for such space or services.)

B. Federal Government responsibilities. The INS will incur the costs of installing computer cabling, telephone lines and any additional telephone trunk lines and telephone switch equipment which may be required. The INS will be responsible for payment of INS long-distance telephone bills for INS staff.

End of document

Attachments:
A. OMB Circular A-87
B. INS Jail Services Cost Statement Form
C. INS Detention Standards
- Group Legal Rights Presentation
- Access to Legal Materials
- Detained Alien Recreation Policy
- Detainee Telephone Access
- Detainee Visitation (Detainee Consent to Media Interview Form, Media Interviewer Agreement Form) (Note: As additional INS Detention Standards are issued, INS will include to the Agreement by modification.)

D. DIHS Pre-authorization Form
E. Jail Agreement Inspection Report
F. SF 3881, ACH Vendor/Miscellaneous Payment Enrollment Form

Ambrose O. Esogbue, #25147-013
#A20-677-387
Federal Detention Center
P.O. Box 5010
Oakdale, LA 71463

Director, Torts Branch
Civil Division
U.S. Department Of Justice
Washington, D.C. 20530                              2-06-06.



RE: Tort Claim Resulting From Hurricane Katrina.

DearSir/Madam,

    I am a long-term permanent resident of the United States, who
has been detained by ICE since November 1st. 2004. I have resided
in this country for 35 years, and resided in New Orleans, Louisiana
with my U.S. citizen wife of 32years, when I was taken into custody.

    I was detained at the Plaquemins Parish Detention Center(P.P.D.C.)
We were evacuated in August of 2005, due the advance of hurricane
Katrina. Please see attached "Declarations".

    Upon the invitation of Assistant District Director of the New
Orleans, ICE, I submitted my tort claim on 11-01-05. As of this
writing I have not yet received any response. A copy of the tort
claim is attached herewith. The claim that I made was just my property
that the ICE had in their possession.

    I also lost everything in my house, as my wife had to leave in
a hurry. In summary, I lost everything I've ever had. In spite of
this awful situation, I was moved three weeks ago to New York to be
deported, without settling this claim, and it is due to a court order
that I am here today.

### Request

    For the foregoing reasons stated above I respectfully request
that this pending tort claim be processed to affect a settlement, promptly.
I also ask that the B.I.C.E. be enjoined from any further deport-
ation effort pending the settlement of this matter.

    Respectfully submitted,

BY: Ambrose O.Esogbue.

10-28-2005 14:05    BEEPER BEEPER FOR LLC 9857925525    PAGE1

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of the form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

**1. Submit To Appropriate Federal Agency:**
FEDERAL EMMERGENCY AND MANAGEMENT AGY.
OR
DHS/ICE

**2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code)**
AMBROSE O. ESOGBUE c/o JILL ESOGBUE
10948 E. 61ST SOUTH, APT. 1115,
TULSA, OK 74133

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. or P.M.) |
|---|---|---|---|---|
| ☐ MILITARY ☐ CIVILIAN | | | | |

**8. Basis of Claim** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof (Use additional pages if necessary.))

I WAS DETAINED BY ICE AT THE PLAQUEMINES PARISH DETENTION CENTER. WE WERE EVACUATED AND COMPELLED TO LEAVE OUR PROPERTIES BEHIND. PLEASE SEE TWO ATTACHED DECLARATIONS:(I) DETAILS EVENTS THAT OCCURED DURING EVACUATION, THE OTHER DETAILS MY ITEMIZED LOSSES. THE SECTION TERMED "PRICELESS" MAY BE REPLACED AT A COST OF $500.00 IF I AM NOT DEPORTED, BUT COULD ESCALATE TO $3,000.00 TO $4,000.00 DUE TO LOGISTICS.

**9. PROPERTY DAMAGE**
**NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT** (Number, street, city, State, and Zip Code)
PLAQUEMINES PARISH, 110 PRISON ROAD, BRAITHWAITE, LA 70040

**BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED.** (See instructions on reverse side.)
PLEASE SEE ONE OF THE ATTACHED DECLARATIONS FOR A DESCRIPTION OF THE LOSSES.

**10. PERSONAL INJURY/WRONGFUL DEATH**
**STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.**
NO INJURY INVOLVED, ONLY TOTAL loss OF PROPERTY.

**11. WITNESSES**

| NAME | ADDRESS (Number, street, city, State, and Zip Code) |
|---|---|
| SGT. KAY WILLIAMS OF P.P.D.C. | 110 PRISON ROAD, BRAITHWAITE, LA 70040 |
| LT. MATHEWS OF P.P.D.C. AND MANY OTHER OFFICERS. | 8606 HWY. 65, WATERPROOF, LA 71375. |

| 12a. | 12b. PROPERTY | 12c. PERSONAL INJURY | 12d. WRONGFUL DEATH | 12e. TOTAL |
|---|---|---|---|---|
| | $4,459.51 SEE ADD #8 ABOVE. | N/A | N/A | $4,459.51 ALSO SEE #8 ABOVE |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| Ambrose O. Esogbue | (918) 695-8328 | 11/1/05 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000 plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

STANDARD FORM 95 (Rev. 7-85) (EG)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

10-28-2005 14:05    BEEFER BEEFER H.M. LLC 9857952535    PAGE7

## PRIVACY ACT NOTICE

This notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq. 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.

C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

### INSTRUCTIONS

Complete all items - insert the word NONE where applicable

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in Item #1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, claim for both must be shown in Item 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the incident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

Failure to specify a sum certain will result in invalid presentation of your claim and may result in forfeiture of your rights.

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden,

to  Director, Torts Branch
Civil Division
U.S. Department of Justice
Washington, DC 20530

and to the
Office of Management and Budget
Paperwork Reduction Project (1105-0008)
Washington, DC 20503

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

| | | |
|---|---|---|
| 15. Do you carry accident insurance? | ☐ Yes. If yes, give name and address of insurance company (number, street, city, State, and Zip Code) and policy number. | ☐ No |

| | |
|---|---|
| 16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible? | 17. If deductible, state amount |

| |
|---|
| 18. [If claim ...] |

| | | |
|---|---|---|
| 19. Do you carry public liability and property damage insurance? | ☐ Yes. If yes, give name and address of insurance company (number, street, city, State, and Zip Code) | ☐ No |

SF 95 (Rev. 7-85) BACK

# DECLARATION

I, **Ambrose O. Esogbue**, declare under pain and penalty of perjury, that the items listed below, inter-alia, were left behind at the Plaquemine Parish Detention Center, by the order of transportation officers, as we were evacuated during the advance of hurricane Katrina. I further declare that this declaration is true and correct, to the best of my knowledge:

## FOOD ITEMS

| No. | Item | Value | Quantity | Total |
|-----|------|-------|----------|-------|
| 1. | Soups | $ .65 each | 7 | $ 4.55 |
| 2. | Pepsi | $ 1.29 each | 2 | $ 2.58 |
| 3. | Hawaian | $ 1.29 each | 2 | $ 2.58 |
| 4. | Honey Buns | $ .85 each | 2 | $ 1.70 |
| 5. | Snickers Candy | $ .80 each | 2 | $ 1.60 |

## BOOKS

| No. | Item | Value | Quantity | Total |
|-----|------|-------|----------|-------|
| 1. | Federal Rules For Civil Procedures | $ 90.00 | 1 | $ 90.00 |
| 2. | National Immigration Laws and Regulations | $ 300.00 | 1 | $ 300.00 |
| 3. | Immigration Law and Crimes | $275.00 | 1 | $275.00 |
| 4. | United States Courts | $ 20.00 | 1 | $ 20.00 |
| 5. | Benders Immigration & Nationality Act (2000 Edition) | $75.00 | 1 | $75.00 |

## RELIGIOUS BOOKS

| No. | Item | Value | Quantity | Total |
|-----|------|-------|----------|-------|
| 1. | Holy Bibles – Kenneth Copeland | $ 65.00 | 1 | $ 65.00 |
| 2. | The Gospel of St. John | $ 10.00 | 1 | $ 10.00 |
| 3. | Bible Teaching Material | $ 150.00 | 1 | $ 150.00 |
| 4. | Record of Church Attendance | 0 | 1 | 0 |
| 5. | Various Christian Help books | Donation | | 0 |

## PERSONAL ITEMS

| No. | Item | Value | Quantity | Total |
|-----|------|-------|----------|-------|
| 1. | Address Book with $ 60.00 money order inside | $ 60.00 | 1 | $ 60.00 |
| 2. | Wallet in property location | $50.00 | 1 | $50.00 |
| 3. | Shoes | $100.00 | 3 pairs | $300.00 |
| 4. | Dress Shirts – Chiang of New York | $ 100.00 | 3 | $ 300.00 |
| 5. | Suits | $ 500.00 | 3 | $ 1500.00 |

1

| | | | | |
|---|---|---|---|---|
| 6. | Pants | | 1 | |
| 7. | Underwear | | Several Pairs | |
| 8. | Preaching Silk Dress/Robe, and Pants | $ 500.00 | 1 | $ 500.00 |
| 9. | Silk Neck Ties | $ 50.00 | 10 | $ 500.00 |
| 10. | RCA Radio and Headphones | $ 25.00 | 1 | $25.00 |
| 11. | CD's – Worship Songs | ~ $ 12.95 | 10 | $ 129.50 |
| 12. | Phone Card with $ 7.00 and $ 5.00 | $ 12.00 | 2 | $ 12.00 |
| 13. | CD Player | $ 25.00 | 1 | $ 25.00 |

| CASH | |
|---|---|
| $ 60.00 Money Order in my add book | Total $ 60.00 |

**Total Loss: $ 4459. 51**

### PRICELESS ITEMS

| No. | Item |
|---|---|
| 1. | Ordination Certificate |
| 2. | MBA degree from the University of Colorado |
| 3. | Marriage Certificate |
| 4. | Daughters Birth Certificate |
| 5. | Wife's Birth certificate |
| 6. | Certificate of Incorporation-Unity In Christ Through Love |
| 7 | Ministry |
| 8. | Letters from Christian Ministries Attesting to my character |
| 9. | Disks of legal briefs, letter etc. |
| 10. | Local Rules For The Fifth Circuit |
| 11. | Local Rules For The Third Circuit |
| 12. | Indispensable records of exhibits, motions etc. |
| 13. | Indispensable legal records accumulated since 1996 |

Ambrose O. Esoghue

**NOTARY**

Executed on this the _____ day of _____, 2005.

_____

Signature of Notary

**SEAL**

My Commission Expires _____

2

# DECLARATION BASED ON INCIDENTS DURING EVACUATION OF I.C.E. DETAINEES OF "F" DORM AT P.P.D.C. DURING HURRICANE KATRINA.

The undersigned declare under pain and penalty of perjury, that the statement below is correct, and true.

At approximately 7 A.M. on Saturday, the 27th of August, 2005, the officers of Plaquemine Parish Detention Center, instructed all the detainees of "F" dormitory to pack up all their belongings in preparation to move. Officers Mike, Bob, and Victor instructed us that we must not take anything with us, including our legal documents.

We objected in unison, and after several hours, officers Bob, Mike, and Victor informed us that we could along our legal documents, but only limited to us to no more than two envelopes. We were kept in preparedness mode until approximately 7 P.M. on 8-27-05, when the transportation crew from Tensas Parish Detention Center, ordered us to line up for our move to Waterproof, Louisiana.

When we lined up to be evacuated, officers from Tensas Parish Detention Center became very aggressive and belligerent, and ordered us to take back everything that was not legal briefs, and cases, our wallets and address books, bibles, etc. We protested and advised them that we needed the items we were handling with, but the Lieutenant Matthews from Tensas Parish Detention Center declared unequivocally to us that he was in charge and that what was command would stand.

While the officers from Tensas were stripping us of our necessary properties, Cpl. Jolly, Sgt. Williams, and Lt. Williams all of P.P.D.C., were delightfully watching them frustrate us.

1

Executed on this the 2nd. Day of September, 2005.

**F Dorm Detainees Signatures:**

NAMES

ALIEN NOS.

1) AMBROSE O. EROGBUE - - - - - - - - - - - - - - - - A 20 677 389

2.) ALI KANDER A OYENUGA - - - - - - - - - - A 20 759 182

3) ANDREW S HANGO - - - - - - - - - - - A 76 029 374

4). VICTOR INWOHA - - - - - - - - - A 28 388 262

5) Fernando Puga - - - - - - - - A 97845622

6) Sua Dao wen - - - - - - - - A 72 475 670

7) Xue zhong-zhong - - - - - - - - A 77354 619

8) JESUS ROMAN - - - - - - A-24780 497

9) JUAN C. CASTILLO - - - - - A 98501056.

10) RENE DURE - - - - - - A 38 762 600

11) ADEBANJO ADETOLA - - - - - - A 96 028 178

12) JAMAL AWAD - - - - - - - 72 451 734

13) RAKHABER PRASHURI - - - - A 900 0130

14) Jorge Garcia - - - - - A 985 01000

15) Ambassador Tsegay - - A 15 575 923

16) AKINOSHO OLUFUNKAYO . A - - A 26 268 009.

17) Angel Brancas. ortis - - A 98501061

18) Alberto Esparzo - - A 43-774-407.

19) Jose Allantura - - A 78 987164

20) AMADI OKECHUKWU M. - - A 93-029-461

Sworn to and Subscribed before me, notary this the 20th day

September, 2005                    Brenda J Loodini #64834

Ex officio Notary. IPSO.

3





FROM: USPS
CARR:
TRK#: 70000600200244909790
RCVD: 2/21/2006

TO: CIVIL/TORTS DIR P ... 87
PH:
BDG: NPB
RM: 819N
PCS: 1                    FLR: 8TH

A 71463

RTE: **BULK5-R1**
MSC: 1331 PENN
CIVIL/TORTS DIR PO BOX 878/888



7000 0600 0024 4909 3790

Ambrose O. Esogbue, #23547-013

#A 20-677-387.

Federal Detention Center
P.O. Box 5010
Oakdale, LA 71463





Director, Torts Branch
Civil Division
U.S. Department Of Justice
Washington,D.C. 20530

AtL.



**U.S. Department of Justice**

*Civil Division, Torts Branch*
*Federal Tort Claims Act Staff*

| | |
|---|---|
| *Post Office Box 888*<br>*Benjamin Franklin Station*<br>*Washington, D.C. 20044* | *Telephone: (202) 616-4400*<br>*Facsimile: (202) 616-5200* |

PJP:EAStrange:rel
157-0-32-55

March 2, 2006

Mr. Ambrose O. Esogbue
Reg. No. 25147-013
Federal Detention Center
Post Office Box 5010
Oakdale, LA 71463

> Re: <u>Administrative Tort Claim of Ambrose O. Esogbue</u>

Dear Mr. Esogbue:

This is in response to the administrative tort claim dated November 1, 2005, which you presented to the U.S. Department of Justice. The Department of Justice received your claim on February 22, 2006.

Pursuant to 28 C.F.R. § 14.2(b)(1), a claim must be presented to the federal agency whose activities gave rise to the claim. In this case, the appropriate agency for evaluating the merits of your claim is the Department of Homeland Security. Accordingly, I am forwarding your claim to that agency. Please direct all further communication regarding your claim to that agency at the address listed below.

Very truly yours,

Elizabeth A. Strange
Trial Attorney

cc:

Mr. Neal Swartz
Deputy Legal Advisor
U.S. Immigration and Customs Enforcement
Department of Homeland Security
425 I Street, N.W., Room 6100
Washington, DC 20536

Honorable Mark D. Wallace
General Counsel
Federal Emergency Management Agency
500 C Street, S.W., Room 840
Washington, DC 20472



**U.S. Department of Justice**

*Civil Division, Torts Branch*
*Federal Tort Claims Act Staff*

---

Post Office Box 888                    Telephone: (202) 616-4400
Benjamin Franklin Station              Facsimile: (202) 616-5200
Washington, D.C. 20044

PJP:EAStrange:rel
157-0-32-55

March 2, 2006

Mr. Neal Swartz
Deputy Legal Advisor
U.S. Immigration and Customs Enforcement
Department of Homeland Security
425 I Street, N.W., Room 6100
Washington, DC 20536

Re:  Administrative Tort Claim of Ambrose O. Esogbue

Dear Mr. Swartz:

The U.S. Department of Justice received the above-captioned administrative claim dated November 1, 2005, on February 22, 2006. Because the claim arises out of the activities of the Department of Homeland Security, I am forwarding the claim to your office for appropriate action. Claimant has been advised of the referral and requested to direct all further communication regarding the claim to your office.

Very truly yours,

Phyllis J. Pyles /sk

Phyllis J. Pyles
Director, Torts Branch

Enclosure

cc:    Mr. Ambrose O. Esogbue
       Reg. No. 25147-013
       Federal Detention Center
       Post Office Box 5010
       Oakdale, LA  71463

       Honorable Mark D. Wallace
       General Counsel
       Federal Emergency Management Agency
       500 C Street, S.W., Room 840
       Washington, DC 20472



**Department of Homeland Security**
Bureau of Immigration and Customs Enforcement

90/16.1

| | |
|---|---|
| Office of the Principal Legal Advisor | 70 Kimball Avenue<br>South Burlington, Vermont 05403 |

April 25, 2006

Mr. Ambrose O. Esogbue
FDC Oakdale
Federal Detention Center
P.O. Box 5010
Oakdale, LA 71463

Re: <u>Claim for damages</u>

Dear Mr. Esogbue:

The administrative claim you filed against the Department of Homeland Security has been denied. This letter is furnished as notice that the claim has been considered and has been denied.

If you wish to file suit against the United States to recover any alleged damages or expenses incurred, pursuant to 28 USC § 2401(b) you must do so in the appropriate United States District Court no later than six months after the date of mailing of this letter.

Sincerely,

Scott A. Whitted
Associate Legal Advisor

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____

☐ Agent
☐ Addressee

B. Received by ( Printed Name )

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

MAY 0 1 2006

1. Article Addressed to:

Mr. Ambrose O. Esogbue
FDC Oakdale
Federal Detention Center
P.O. Box 5010
Oakdale, LA 71463

3. Service Type
☒ Certified Mail  ☐ Express Mail
☐ Registered  ☒ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)

7004 2510 0004 6890 2477

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

UNITED STATES POSTAL SERVICE    ALEXANDRIA LA 713

01 MAY 2006 PM 1 T

First Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Scott Whitted, Associate Legal Advisor
Bureau of Immigration and Customs Enforcement
Department of Homeland Security
70 Kimball Avenue — Room 103
South Burlington, VT  05403-6808

*Rebecca Hunt*

Ambrose O. Esogbue, #25147-013
Federal Detention Center
P.O. Box 5010
Oakdale, LA 71463



RECEIVED
MAY 22 2006
EASTERN REGIONAL COUNSEL

Mr. Neal Swartz
Deputy Legal Advisor
U.S. Immigration and Customs Enforcement
Department Of Homeland Security
425 I Street, N.W., Room 6100
Washington, DC 20536.

April 28, 2006.

RE: Administrative Tort Claim: JPJ:EAStrange:rel 157-0-32-55.

Dear Mr. Swartz,

On March 2, 2006, Mrs Elizabeth A. Strange of the Justice Department's Civil Division, Tort Branch, forwarded my tort claim petition to you under 8 C.F.R. §14.2(b)(1), because the claim stems from the activities of the Department of the Homeland Security. See attached letters.

I have waited to read from you, but have been met with a deafening silence.

## Cronology of the Origin Of the Claim.

As a result of the B.I.C.E.'s evacuation of Detainees from Plaquemines Parish Detention Center, due to the then approaching Hurricane Katrina, we all lost our property.

In late October of 2005, top Executives of New Orleans BICE, visited us at T.P.D.C., in Waterproof, Louisiana, and gave us the Tort Claim forms to complete. We completed them promptly, and returned them.

After waiting for several months without any response, while detainees continued to be removed without settlement, I wrote and forwarded copies of the claim to Ms Elizabeth A. Strange. On March, 2006, Ms Strange forwarded same to you. I've waited for almost two months without receiving your response.

For the foregoing reasons, I now write to you demanding a prompt settlement, because time is of the essence, as ICE continues its relentless efforts to remove me, as it has done to countless others.

For the foregoing reasons, I respectfully ask that you settle this claim within ten(10) business days of your receipt. My failure to receive an acceptable response from you, would leave me with no choice but to pursue the legal remedy available to me.

Thank you for your prompt attention to this matter.


Respectfully,


Ambrose O. Esogbue.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **AMBROSE O. ESOGBUE,** | ) |
| | ) |
| Plaintiff, | ) |
| v. | )   Civil Action No. 06-1895 (RMC) |
| | ) |
| **DEPARTMENT OF HOMELAND SECURITY,** *et al.,* | ) |
| | ) |
| Defendants. | ) |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) |

**ORDER**

UPON CONSIDERATION OF the accompanying Memorandum, it is, hereby,

**ORDERED** that Defendants' Motion to Dismiss, Or Alternatively For Summary

Judgment is **GRANTED.**

**SO ORDERED**.

May ___, 2007.                         _____
                                       ROSEMARY M. COLLYER
                                       UNITED STATES DISTRICT COURT JUDGE