United States District Court
District of Columbia

Ambrose O. Esogbue,
Plaintiff, Pro-se

Civil Case No.06-1895(RMC)

V.

Department of Homeland Security, et al,
Defendants.

## Plaintiff's Opposition to Defendant's Motion to Dismiss

.   Now comes the Pro-se Plaintiff, and respectfully asks this Honorable Court to construe his opposition motion liberally, because he is pro-se, and also because he has been deported to Nigeria, wherein he lacks the legal resources necessary to adequately execute this motion. First the plaintiff respectfully asks this Honorable Court to construe his motion liberally, because he is pro-se, and because he is further disadvantaged by lack of legal resources with which to proceed. The Supreme Court held in **Estelle V. Gamble,** 429 U.S. 92, 99(1976)(Finding that handwritten pro-se document should be liberally construed); **Haines V. Kerna,** 404 U.S. 519, 520(1972)( Finding that pro-se complaint "no matter how inartfully pleaded" should be held to less stringent standards than those filed by lawyers); **United States V. Sannders**, 373 U.S. 11, 22(1963)( Holding that Pro-se defendant's pleading should not be held to the niceties of lawyers' pleadings or be dismissed because his claims seem unlikely to prove meritorious).

District Courts and Circuit Courts, including this one have held the same, see **Henthorn V. Department of the Navy,** 29 F.3d 682( D.C. Cir.1994)( Pro-se complaints held to less stringent standards than pleadings drafted by lawyers), **Gochnour V. Marsh,** 754 F.2d1137(5th. Cir. 1985)(" [The Courts] read[s] pro-se pleadings and

RECEIVED
JUN 8   2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

briefs with tolerance and understanding"); **Acyeman V. INS,** 296 F 3d 871,878 (9th. Cir. 2002)( Court will interpret Pro-se claims liberally).

Furthermore the plaintiff has not read the entirety of the defendants' motion to dismiss, due to logistic impediments imposed on the plaintiff by his deportation. Up to twelve pages of the motion and all but two pages of the exhibits have not been successfully transmitted to the plaintiff. However, the plaintiff will make his best effort and oppose the defendant's motion to dismiss, infra.

In the first paragraph of the defendant's introduction, the defendant incorrectly states, "Plaintiff seeks $4,459.51, for loss of property that occurred as a result of Hurricane Katrina." The correct amount is $4,459.51 plus $4000.00 which amounts to A total of $8,459.51. Please see page 1, items numbers 12(a) and 12(d) of the tort claim.

The defendant argues that this Honorable Court lacks jurisdiction to adjudicate this case on the following grounds: a) That the plaintiff filed his complaint more than six months after he received his notice of denial; b) That the tort, if any, that caused the loss , was that of a contractor; c) That it was caused by flood or flood waters; d) And that if the plaintiff survives the motion to dismiss that because the action occurred within the Western District of Louisiana. Below is the plaintiff's opposition:

**Late filing:** The defendant's claim that the plaintiff's complaint was filed on November 7, 2006, is incorrect, and without merit. The plaintiff aver that he mailed his complaint to this court on October 5, 2006, and was delivered on October 10th, 2006. **Please see attached Exhibit 1, for the certified mail receipt, and the USPS's "Track and confirm" record**............

The plaintiff may not be held responsible for the court's scheduling process. Under federal law, the date of the institutional postal facility received the mail is the operative date. In this instant case the complaint was mailed on October 5th. 2006, and that is the date the complaint must be considered filed.

Since October 5, 2006 is within the six months required from April 25, 2006, this Honorable Court has the jurisdictional authority to adjudicate this case.

2

The letter to which the defendant referred to as ( Def. Ex. 7) has no bearing on this case, because the plaintiff mailed the letter in the morning of April 29, 2006, and the denial letter was received in the evening of the same date. The Defendant's Exhibit 6, made clear that plaintiffs tort claim was denied without any reasons, **Ipsi-dixit.** Had the plaintiff received the denial letter before mailing (def.exhibit 6), he would not have mailed. Clearly the threshold date is April 25, 2006, and October 5 or October 10 are within the required the six months required by law.

For the reasons, supra, the defendant's motion to dismiss on this ground must be dismissed.

**The Tort, if any, was caused by a contractor and not an employee:**

This Honorable Court is respectfully asked to see that the Hurricane Katrina did not occur in a hidden corner of the Universe, but was witnessed by most, the world over. It was an unprecedented catastrophe witnessed by most, except the defendants, who now seem to have forgotten. Several countries, in a show of solidarity and condolescence offered financial help to the United States and the people of Louisiana in particular.

The defendant must be reminded that due to the magnitude and scale of the hurricane Katrina, the issue of jurisdiction was quickly resolved when the United States government stepped in and assumed jurisdiction, via the Federal Emergency and Management Administration (FEMA). In addition to FEMA, the National Guard Reserve was called up, and the head of FEMA even lost his job for incompetence. The Federal government spent billions of dollars to cover both emergency and medium and long-term losses.

The plaintiff who was also a resident of the city of New Orleans, lost most of his possessions, as his wife of 33 years fled for her life, to Tulsa, Oklahoma, where she now resides with our daughter.

When Mr. Beemer, and Mr. Smith came to visit the detainees at the TPDC, they assumed jurisdiction, when they categorically promised to reimburse the detainees losses. They gave the detainees no reason to doubt their pronouncements. When Mr. Smith and

Beemer invited the submission of the tort claim, by actually providing the forms, they were believed.

Till Mr. Beemer and Smith failed to act on the claims, the detainees had every expectation of having their claims settled as promised by those who represented the Federal government. It was a failed attempt by the ICE to deport the Plaintiff in January of 2006 without settling his claim, it was only then that plaintiff knew for sure that the invitation to file the claim was done in bad fate. Hence plaintiff resubmitted the claim to the Washington, D.C.

Court is respectfully asked to see the third paragraph of plaintiff's letter dated 2-06-06. Plaintiff informed the Director of the Tort Branch of the Civil Division, that he previously submitted his claim on 11-01-05. Based on her professional knowledge, she transferred the claim to Mr. Swartz of ICE. See Def. Ex. 2.

Upon receipt, Mr. Swartz should have transferred the claim to New Orleans, Louisiana, if he was concerned about jurisdiction, but instead he transferred it to Connecticut where the denial order was entered. If this court lacks jurisdiction as the defendant now seems to believe, then one could also argue, that the ICE of Connecticut lacks jurisdiction to deny the claim in the first place.

This is simply another bad fate effort to frustrate and deny this plaintiff his claim. All those who have handled this claim within the Justice Department and ICE are lawyers and should have known of the alleged jurisdictional problem when they received the claim. The denial order itself did not mention jurisdiction as reason for the denial.

This Honorable Court is respectfully asked to hold that the defendant waived the jurisdiction issue, when the U.S. government stepped in, and took control of the Katrina affair. United States District Courts have also assumed jurisdiction, since hurricane Katrina, and have held that the United States government is liable via FEMA.

Furthermore, the Defendant asserts that the contract they have with the P.P.D.C. absolves them of any liability, this plaintiff aver that he is unaware of any such contract. If that were so, plaintiff asserts that the defendants did not comply with the terms of such contract, because approximately one month before hurricane Katrina, P.P.D.C. detainees including the plaintiff were evacuated to the Orleans Parish Police (O.P.P.) for a week.

During that evacuation, the defendants exclusively conducted the evacuation, with ICE buses. **See attached affidavit at #s 14 and 15.**

Furthermore the senior ICE officials who provided the plaintiff with the tort claims form, and invited him to apply, did not share the defendants' new position that PPDC is liable under FTCA. The officials expressly promised to settle the claims. They even asserted that the detainees who fail to receive their settlement would receive it in their countries of origin. This plaintiff relied on the express promise that the settlement would be affected even if outside the United States, when he submitted his claim to the New Orleans ICE.

Plaintiff relied on the express declaration of the senior ICE officials, Mr. Beemer and Mr. Smith when he submitted his claim, and the defendants may not now weasel their way out by putting the blame on PPDC. Had they seriously believed that the PPDC is responsible, they would informed the plaintiff and others, from the inception of this case to contact PPDC, instead the detainees were invited to submit the claim to ICE.

The alleged FTCA contract which the defendants now rely on, and which the plaintiff has not seen, due to logistical problems, if true, must have been put in place during Katrina alone, because it was not adhered to during the OPP evacuation, less than a month earlier. It was further ignored during the TPDC evacuation, because it was again the ICE that arranged for the evacuation, with TPDC vehicles, and the decision to leave the belongings behind was that of the New Orleans ICE. Having had more than 24 hours notice from the National Hurricane Center, Officer Victor informed us that they were on orders from ICE to leave the properties behind.

The fact of the matter is that the New Orleans ICE had full operational control of the evacuation, hence the senior officials, Beemer and Smith, gave the detainees the clai0m form, which is a display of authority. The defendants clearly are liable for the Civil Plaintiff's losses.

**Defendants' claim of immunity under 33 U.S.C. §702c.**

The defendants argue that they are not liable for damages resulting from flood or flood waters. Defendants ignored the fact that defendant assumed liability, immediately after Katrina struck. To now claim that it is immune to liability, despite the fact that they

assumed liability and responsibility, by employing the services of FEMA and the National Guard, inter-alia to settle claims from Hurricane Katrina.

Nonetheless 33 U.S.C. §702c addresses damages from flood and flood waters, and does not apply to hurricanes. Hurricane Katrina is neither flood nor flood waters, but simply a hurricane.

Longman Active Study Dictionary defines hurricane as **"a violent storm with very strong fast winds"** And **storm is defined as "Very bad weather in which there is a lot of wind, rain, snow etc."** Neither in hurricane nor storm is the word "flood or flood waters used" Therefore 33 U.S.C. **§702c does not apply to liability from hurricane Katrina.** The President of the United States of America was well aware of the inapplicability of 33 U.S.C. §702c, when he assumed liability, and called out the National Guard. The New Orleans ICE was also aware when it took responsibility of the detainees' losses.

**Defendants request that the Court transfer this case to the Western District of Louisiana.**

In asking the court to transfer this case to Western District of Louisiana, the Defendants allege that the plaintiff should have filed this case in Louisiana because he is detained in Oakdale, Louisiana, and because the claim originated in Western District of Louisiana.

The defendants must be reminded that Plaintiff first filed his claim in the Eastern District of Louisiana, without response. The Plaintiff subsequently filed it at the Justice Department, who, knowing the origin of the case, transferred it to D.C. ICE. The D.C. ICE subsequently transferred the case to Connecticut, where it was denied. All those that handled this claim, from the Justice Department to ICE, are trained lawyers, and could have transferred the claim to New Orleans, but failed to do so. Obviously because jurisdiction was not, and should not be an issue in this case, defendant's request to transfer must be rejected.

Furthermore, the plaintiff no longer resides in the United States, having been deported by the defendants. Plaintiff's wife and daughter reside in Tulsa, Oklahoma.

The defendants, on the other hand, reside and do business in Washington, D.C.. The Tort claim was denied in Connecticut. Clearly, this Honorable Court has both personal matter, and subject matter jurisdictions to entertain this case, under the applicable statutes, enumerated in the plaintiff's civil case.

The defendants have been ordered to settle claims, pay living expenses, rent subsidies, inter-alia, by United States District Courts. Most important, is the fact that the plaintiff was **a civil** and not a criminal detainee, as a result has every right to his property.

Court is respectfully asked to consider every other issue not discussed by the plaintiff, as oppsed.

### Conclusion.

This Honorable Court is respectfully asked to deny the Defendants' motion to dismiss, because the plaintiff has stated his claim on the tort claim form, this civil action, and now in this opposition of motion to dismiss. Plaintiff's claim is **$8,459.51** as explained, supra.

The Defendants' attempt to weasel out of settling this claim with frivolous issues of this court's lack of jurisdiction, and the defendants' immunity should be denied by this Honorable Court.

This Honorable Court should impose punitive damages on the defendants, in any amount it deems fit and proper, for denying a claim they should have settled in good faith, and for wasting this Court's precious time.

For the foregoing and good cause shown, and other such good cause not mentioned, this Honorable Court is respectfully asked to deny the defendants' motion to dismiss.

Executed on this the 31st. day of May, 2007.

Respectfully submitted,

BY: _____

    Ambrose O Esogbue, Pro-se
    Phone: 234-08061679824
    C/o Mrs. Jill M. Esogbue
    10964 E. 61St. South, #1724
    Tulsa, Oklahoma.

Certificate of Service.

I, Ambrose O. Esogbue, Pro-se, Plaintiff, declare under pain and penalty of perjury, that the foregoing was mailed to defendants via counsel, Ms Sherese Louis, at U.S. Attorney's Office, Civil Division, 555 4th Street, N.W., Washington, D.C. 20530. Same was mailed via plaintiff's wife, Jill M. Esogbue using the USPS, postage prepaid.

    Executed on this the 31st. day of May, 2007.

Respectfully submitted,

BY: _/s/ Ambrose Esogbue_____

    Ambrose O. Esogbue, Pro-se.

United States District Court
District of Columbia

Ambrose O. Esogbue  Case No. 06-1895 (RMC)
Plaintiff, Pro-se

V.

Department Of Homeland Security, et al
Defendants

Plaintiff's Affidavit Contesting Defendant's Statement Of " Material Facts As To Which There Is No Genuine Issue"

I, Ambrose O. Esogbue, Plaintiff, Pro-se, declare under penalty of perjury, and under 28 U.S.C. §1746, and aver as follows:

1. That while I was detained at the Plaquemines Parish Detention Center (P.P.D.C.) on August 27th. 2005, I was so detained under the authority of the Bureau of Immigration and Custom's Enforcement (BICE).

2. That having resided in the United States as a lawful permanent Resident for over 30 years, with no record of absconding, I requested bail pending the outcome of my deportation case, but was ignored by FOD's Craig Robinson and Steven Boll respectively.

3. That I was not privy to any intergovernmental agreement pursuant to which I was detained.

4. That on/or about the 26th. Of October 2005, high ranking officials of New Orleans branch of BICE, Mr. Beemer and Mr. Smith visited the detained Hurricane Katrina evacuees, at the Tensas Parish Detention Center (TPDC), and assured them of a settlement for their losses.

5. That Mr. Beemer and Smith invited the detainees to file their claims, and provided the forms themselves, on their own initiative, since most of the detainees knew nothing about tort claim.
The forms were faxed to the TPDC chaplain, who distributed them to the detainees.

6. That the chaplain, on order from the BICE officials collected the completed forms for onward transmission to Mr. Beemer. Mr. beemer's name is indelibly imprinted on the tort claim form.

7. That the settlement was guaranteed to the detainees, and that at no time were they told that this was going to end up in court.

8. That after submission of the claims, Plaintiff received no response from the New Orleans BICE, but instead deportation efforts were accelerated.
9. That relying on the address at the back of the tort claim form, I mailed a copy of the submitted claim to the U.S. Department of Justice, Civil Division on February 6, 2006.
10. That I subsequently received a denial letter from the BICE in the State from Connecticut dated April 25th. 2006.
11. That no reason was given for the denial of the claim.
12. That this suit was recommended by the denial letter.
13. That the merit of the tort claim was never questioned.
14. That this suit was timely filed, having been mailed on October 5th. 2006, and received by this court on October 10th. 2006. See attached USPS confirmation of delivery.
15. That the defendants were also served a copy of the suit.
16. That while this case was still pending the defendants deported this plaintiff, rendering the Plaintiff's prosecution of this case, extremely difficult and complicated.
17. The deportation of the plaintiff while this case was still pending, confirms the defendants' bad faith fate effort from the inception.

The plaintiff aver that the foregoing is true and correct to the best of my knowledge.

Executed on this the 30th. Day of May, 2007.

Respectfully submitted,

BY: _____/s/ Ambrose Esogbue_____

Ambrose O. Esogbue, Pro-se
Phone: 234-08061679824
C/o Mrs. Jill M. Esogbue

# YAHOO! MAIL

| | |
|---|---|
| **Date:** | Tue, 5 Jun 2007 02:23:47 -0700 (PDT) |
| **From:** | "Kodi Ezeobi" <kodiezeobi@yahoo.com> |
| **Subject:** | Documents |
| **To:** | bigbirdtreeservice@yahoo.com |

Documents

KODI EZEOBI
FIX LINE: 234-1-8152520
MOBILE: 234-8023133898
HIS BANNER OVER US IS LOVE

---

Take the Internet to Go: Yahoo!Go puts the Internet in your pocket: mail, news, photos & more.

**Attachments**

Files:

📎 **Affidavit.doc** (25k) [Preview]

📎 **Opposition_Motion_2.doc** (44k) [Preview]

Photos:

**exhibit_1.jpg** (23k) [View]

Save All to Yahoo! Photos


UNITED STATES POSTAL SERVICE

Track & Confirm

## Track & Confirm

**Search Results**

Label/Receipt Number: 7006 9810 0005 4562 6255
Detailed Results:
- Delivered, October 10, 2006, 4:37 pm, WASHINGTON, DC 20001
- Arrived at Unit, October 10, 2006, 11:12 am, WASHINGTON, DC 20001
- Acceptance, October 05, 2006, 8:19 am, OAKDALE, LA 71463

Track & Confirm

Enter Label/Receipt Number

Notification Options

Track & Confirm by email

Get current event information or updates for your item sent to you or others by email.



U.S. Postal Service
CERTIFIED MAIL RECEIPT

Postage  $ 1.59
Certified Fee  2.40
Return Receipt Fee  1.85
Total Postage & Fees  $ 5.84

Sent To: U.S. District Court, D.C.
Street, Apt No.: 333 Constitution Avenue
City, State, ZIP+4: Washington, DC 20001

7006 9810 0005 4562 6255

http://trkcnfrm1.smi.usps.com/PTSInternetWeb/InterLabelDetail.do