# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMBROSE O. ESOGBUE,** | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 06-1895 (RMC) |
| | ) |
| **DEPARTMENT OF HOMELAND SECURITY,** | ) |
| | ) |
| and | ) |
| | ) |
| **IMMIGRATION AND CUSTOMS ENFORCEMENT,** | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT WITH PREJUDICE OR, IN THE ALTERNATIVE, TO TRANSFER TO THE EASTERN[1] DISTRICT OF LOUISIANA

The issue before the Court is whether the Defendants can be held liable for *pro se*

Plaintiff's alleged loss of personal property that occurred 1) at a detention facility operated by an

independent contractor and 2) as a result of flood or flood waters caused by a natural disaster,

Hurricane Katrina. Plaintiff's Complaint should be dismissed for several reasons.[2]  First, the

---

[1]      In Defendants' Motion to Dismiss, Defendant argued in the alternative that this case should be transferred to the Western District of Louisiana, where Plaintiff was evacuated after the Hurricane. In fact, because the Plaquesmines Parish Detention Center ("PPDC") is located in the Eastern District of Louisiana, and the Eastern District is where a substantial part of the events or omissions giving rise to the claim occurred, transfer to the Eastern District would be appropriate.

[2]      Plaintiff has named the United States Department of Homeland Security ("DHS") and United States Bureau of Immigration and Customs Enforcement ("ICE") as Defendants in this action. It is axiomatic that federal agencies cannot be sued for damages *eo nomine* unless Congress has explicitly or implicitly denominated the agency as amenable to such suit. *See Blackmar v. Guerre*, 342 U.S. 512, 514-515 (1951). By statute, the only proper Defendant in the instant suit is the United States of America. *See* Title 28 United States Code, § 2679(a).  Because the FTCA does not allow suits to be brought against individual government agencies, dismissal of Plaintiff's Complaint against DHS and ICE is warranted.  *See Cox v. Secretary of Labor*, 739 F. Supp. 28, 29 (D.D.C. 1990) (suit against the Secretary of Labor rather than the government itself must be

Court lacks subject matter jurisdiction over this lawsuit because the United States' limited waiver of sovereign immunity from suit does not extend to the torts of independent contractors. Second, the United States is immune from suit for property damages caused by flood or flood waters under the Flood Control Act, 33 U.S.C. § 702c. In support of this argument, Defendants invite the Court to take judicial notice of the fact that 1) the Plaquesmines Parish Detention Center ("PPDC") where Plaintiff resided is located on 110 Prison Road, Braithwaite, LA, a road that runs *between and adjacent* to the failed Louisiana levees and the Mississippi River, and 2) the neighborhood where the PPDC is located was engulfed by flood waters as a result of Hurricane Katrina. *See* Def. Exh. 9, Supplemental Declaration of Scott Beemer and attached photographs and map of the PPDC. Because Plaintiff has not demonstrated that he should prevail on his claims for loss of personal property under any legal theory, this Complaint must be dismissed.

## BACKGROUND

As described more thoroughly in Defendants' Motion to Dismiss or Alternatively to Transfer ("MTD"), Defendant ICE contracts with the PPDC, a private contractor, for the detention and care of persons detained under the authority of the Immigration and Nationality Act. Plaintiff Ambrose Esogbue[3], a citizen of Nigeria, resided at the PPDC, and was apparently

---

dismissed for lack of subject matter jurisdiction) (citing numerous cases); *Galvin v. OSHA*, 860 F.2d 181, 183 (5th Cir. 1988) ("an FTCA claim against a federal agency or employer as opposed to the United States itself must be dismissed for want of jurisdiction"); *Stewart v. United States*, 655 F.2d 741, 742 (7th Cir. 1981); *Hagmeyer v. Department of Treasury*, 647 F. Supp. 1300, 1304-05 (D.D.C. 1986) (dismissing FTCA claim against the Department of Treasury). Alternatively, pursuant to Rule 17 (a), the caption should be changed to reflect that the United States of America is the real party in interest. *See* 28 U.S.C. § 2679(a);

[3]     Though Plaintiff asserts he was a civil detainee and not a criminal detainee, *see* Plaintiff's Opp. at 7, it was Plaintiff's criminal convictions that resulted in his detention and deportation from the United States. *See* Def. Exh. 10, Order to Show Cause. Under the Immigration and Nationality Act ("INA"), *as amended*, Plaintiff was eligible for deportation from

safely evacuated from the PPDC on August 27, 2005, before the onset of Hurricane Katrina.

After exhausting his administrative remedies, Plaintiff filed suit on November 7, 2007[4], alleging

his personal property was destroyed on "August 28, 2005, after Hurricane Katrina descended on

the city of New Orleans, and the Plaquemines Parish Detention Center was totally destroyed

along with the properties of the evacuated detainees and the Plaintiff's." Compl. at 3.  As stated

in Defendants' MTD, the PPDC was operated by an independent contractor who was

contractually responsible for the daily operations at the PPDC, including emergency evacuation

of the federal detainees.  MTD Def. Ex.1, Article III, IV.

> In Plaintiff's Opposition to Defendants' MTD, Plaintiff alleges that
>
> When Mr. Beemer, and Mr. Smith came to visit the detainees at the TPDC, they assumed jurisdiction, when they categorically promised to reimburse the detainees losses. . . .When Mr. Smith and Mr. Beemer invited the submission of the tort claim, by actually providing the forms, they were believed.

Plaintiff's Opp. at 3-4.  Plaintiff further alleges that "the invitation to file the claim was done in

bad fate (*sic*)," *Id.* at 4; that "Hurricane Katrina is neither flood nor flood waters, but simply a

---

the United States under three grounds: 1) section 241(a)(2)(B)(i), for Plaintiff's 1980 conviction related to a controlled substance; 2) section 241(a)(2)(A)(iii), for Plaintiff's 1994 conviction of an offense defined as an aggravated felony; and 3) section 241(a)(2)(A)(ii), as Plaintiff has two convictions for crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. *Id.*  On September 29, 1999, an Immigration Judge ordered Plaintiff deported to his native country of Nigeria.  Def. Exh. 11.  On May 12, 2000, the BIA dismissed Plaintiff's appeal.  Def. Exh. 12.  Plaintiff filed various appeals, including a petition for habeas corpus relief.  In an Order dated March 23, 2005, Plaintiff's petition for habeas corpus relief and request for a stay of deportation were denied.  Def. Exh. 13.  Plaintiff was deported on December 12, 2006.

[4]    Defendants' MTD argued that this Court lacks jurisdiction to consider the Complaint under the FTCA because Plaintiff failed to meet the jurisdictional requirements of the FTCA that an action be filed within six months after the date of mailing of the agency's April 26, 2006, final denial of the claim.  Plaintiff argued in his Opposition that the "mailbox rule" should apply to deem his Complaint timely filed, as he mailed his Complaint on October 5, 2006, and it was received by the Court on October 10, 2006.  Upon inquiry to the Clerk's Office, Defendants confirmed that the Plaintiff's Complaint was timely received and hence withdraw their argument that Plaintiff failed to meet the jurisdictional requirements of the FTCA.

hurricane;" and that the President of the United States "called out the National Guard" and "assumed liability." Opp. at 6. For the reasons that follow, Plaintiff's Complaint must be dismissed.

## ARGUMENT

I.     **The United States is Entitled to Sovereign Immunity**.

    A.     **The United States Has Not "Assumed Liability" For Losses Resulting From Hurricane Katrina.**

As the attached declaration of Scott Beemer, Detention Operations Supervisor, Department of Homeland Security, U.S. Immigrations and Customs Enforcement, Office of Detention and Removal Operations attests, at no time did the United States "assume liability" for losses of personal property resulting from Hurricane Katrina. Def. Exh. 8, Beemer Decl. ¶ 4. The purpose of handing out Form 95, Claim for Damages, Injury or Death, was not to solicit claims or "assume liability" for claims, as Plaintiff alleges, but in response to detainees' desire to file damage claims for personal property they had lost during the evacuation. *Id.* at 3. Because some of the detainees wanted to file claims for damages, they were provided with forms for that purpose. *Id.* Contrary to Plaintiff's allegations, at no point did Mr. Beemer nor, to Mr. Beemer's knowledge, Mr. Smith, the Deputy Chief of Detention at the Plaquesmines Parish Sheriff's Office, invite the submission of claims or assume liability for any lost property. Beemer Decl. ¶¶ 3-4. Further, no ICE employees were involved in the actual evacuation of detainees, nor did ICE officials instruct Plaquesmines officials on what detainees could take with them during the evacuation. *Id.* at 5-6. Lastly, although Plaquesmines officials hoped to evacuate the detainees' personal property separately, the first priority was to evacuate the detainees. *Id.* at 7.

2

Plaquesmines officials were unable to evacuate the detainees' personal property because of the onset and destructiveness of the powerful hurricane.  *Id.*

## II.     The United States Has No FTCA Liability for Plaintiff's Alleged Property Loss Under the Independent Contractor Exception.

As stated in Defendants' MTD, ICE contracts with the PPDC for the detention and care of the detainees, which included Plaintiff.  The Intergovernmental Service Agreement for Housing Federal Detainees (IGSA) in effect between ICE and the PPDC at the time of the evacuation provided that

> Article IV. Receiving and Discharging Detainees:
>
>> D. <u>Emergency evacuation</u>.  In the event of an emergency requiring evacuation of the Facility, The Service Provider shall evacuate INS[5] detainees in the same manner, and with the same safeguards, as it employs for persons detained under the Service Provider's authority.  The Service Provider shall notify INS within two hours of such evacuation.

(Def. Ex. 1).  This agreement does not provide the United States with discretionary authority over the evacuation of the detainees and what they were or were not allowed to take with them.

Further, the IGSA also provides as follows:

---

[5]     Effective March 1, 2003, the U.S. Immigration and Naturalization Service ceased to exist as a separate agency within the U.S. Department of Justice and its functions were transferred into three new agencies, all part of the U.S. Department of Homeland Security ("DHS").  INS's enforcement functions were transferred to the U.S. Immigration and Customs Enforcement ("ICE").  *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (codified at 6 U.S.C. 251).  The Executive Office of Immigration Review, including the immigration courts and appellate board, remained within the U.S. Department of Justice.

3

Article XIV. Hold Harmless and Indemnification Provisions

B. <u>Federal Government held harmless</u>. The Service Provider shall save and hold harmless and indemnify federal government agencies to the extent allowed by law **against any and all liability claims**, and costs of whatsoever kind and nature for injury to or death of any person or persons **and for loss or damage to any property occurring in connection with, or in any way incident to or arising out of the occupancy, use, service, operation or performance of work** under the terms of this Agreement, **resulting from the negligent acts or omissions of the Service Provider, or any employee, or agent of the Service Provider.**

(Def. Ex. 1) (emphasis added). Plaintiff alleges that

the decision to leave the belongings behind was that of the New Orleans ICE. Having had more than 24 hours notice from the National Hurricane Center, Officer Victor informed us that they were on orders from ICE to leave the properties behind.

Plaintiff Opp. To Reply at 5. By Plaintiff's own admission, he was following the instructions of "Officer Victor," who is not a federal employee, in leaving his property behind. The United States cannot be held liable for the allegedly tortious conduct of independent contractors. *See United States v. Orleans*, 425 U.S. 807, 813-14 (1976); *Logue v. United States*, 412 U.S. 521, 530 (1973); *Means v. United States*, 176 F.3d 1376, 1380 (11th Cir. 1999); *Williams v.United States*, 50 F.3d 299, 304 (4th Cir. 1995). Nor can the Government be held liable under a strict liability theory. *Laird v. Nelms*, 406 U.S. 797, 802-03 (1972); *see also Dalehite v. United States*, 346 U.S. at 42. The United States may only be held liable under the FTCA for actions taken by federal employees, and independent contractors are not considered federal employees. The determination of who is or is not a federal employee under the FTCA is governed by federal law. *See Standard Oil Co. v. Johnson*, 316 U.S. 481, 483 (1942).

According to the seminal case *of Logue v. United States, supra*, the "critical factor" in distinguishing a federal employee from an independent contractor is "the [Government's] authority to control the detailed physical performance of the contractor." *Id.* at 527-28. Only

where the government has power over the independent contractor to supervise his day-to-day activities, and control the detailed physical performance of his contract can an independent contractor be deemed a federal employee under the FTCA. *Logue v. United States*, 26 *supra*.

Given the terms of the IGSA detention facility contract between the ICE and the PPDC, it is clear that such an independent contractor relationship was established. Thus, regardless of Plaintiff's unsubstantiated allegation, based on "Officer Victor's" hearsay statement, contradicted by the declaration of Scott Beemer, that it was ICE's decision to evacuate the detainees first and leave the detainees' property, since the IGSA contract is unambiguous, the Court can interpret it as a matter of law and grant summary judgment in favor of the Defendants. *See America First Inv. Corp. v. Goland*, 925 F.2d 1518, 1520 (D.C. Cir. 1991); *see also Davis v. Chevy Chase Financial, Ltd.*, 667 F.2d 160 (D.C. Cir. 1981) ("In cases in which the dispositive issue involves the construction of a contract, summary judgment may be appropriate if the provisions of the contract are unambiguous.").

**III. The Court Should take Judicial Notice of the Flooding that Occurred in Plaquemines Parish As a Result of Hurricane Katrina, and the Proximity of the PPDC to the Levee.**

As the Government's Exhibits demonstrate, due to the proximity of the PPDC to the levee, the PPDC incurred severe flooding as a result of Hurricane Katrina. *See* Def. Exh. 9, Supplemental Decl. Of Scott Beemer. The PPDC where Plaintiff was housed, on 110 Prison Road in Braithwaite, LA, was located directly across the road from, and adjacent to, the levee and the Mississippi River. *Id.* ICE obtained photographs of the damage to the PPDC on August 29, 2005, taken within approximately 45 minutes to one hour after Hurricane Katrina had cleared the area. *Id.* The photos were taken by the Plaquemines Parish Sheriff's Office's Chief Deputy, Anthony Smith, from a Plaquemines Parish Sheriff's Office helicopter. *Id.* The PPDC sits on an

east bank, surrounded by the Mississippi River and the Gulf of Mexico. *Id.* The distance from

the exterior wall of the prison to the Mississippi River -- and the levee -- is approximately 150

yards. *Id.* Although the levee broke during the hurricane, the break is not visible in the photos.

*Id.* The PPDC was almost completely submerged after the levee broke, as the water rose to the

top of the building, and the building is approximately 20 feet high. *Id.*

Thus, it is apparent that the loss of property that Plaintiff complains of occurred as a

result of Hurricane Katrina and the resulting flood. The United States is immune from liability

for damages resulting from flood or flood waters under the Flood Control Act, 33 U.S.C. § 702c,

which provides:

> No liability of any kind shall attach to or rest upon the United
> States for any damage from or by flood waters at any place."

*See Mocklin v. Orleans Levee Dist.*, 877 F.2d 427, 429 (5th Cir. 1989)(finding no federal liability

even in connection with flood control projects in which the government is involved); *Florida*

*East Coast Ry. Co. V. U.S.*, 519 F.2d 1184, 1198-1199 (5th Cir. 1975) (dicta discussing no federal

government liability for natural events). Accordingly, because Plaintiff's claims are premised

upon damage caused by flood waters, they must be dismissed.

## IV. The United States Is Not Liable under the FTCA for Claims Attributing Loss of Property to the Government's Response During Hurricane Katrina.

Even if this Court assumes Plaintiff's allegations are true that "the decision to leave the

belongings behind was that of the New Orleans ICE," the United States would still not be liable

for Plaintiff's losses of property. In a recently decided group of consolidated cases, *Freeman v.*

*U.S. Dep't of Homeland Security*, *Slip Copy*, 2007 WL 1296206 (E.D.La.)(April 30, 2007), a

Louisiana district court addressed a similar issue to the issue presented here. Plaintiffs in

*Freeman* sued DHS, FEMA, and other agencies and officials, under various legal theories, for

6

wrongful death and survivor action damages after some of their loved ones passed away in the

days shortly after the onset of Hurricane Katrina. *1.  Only one plaintiff, Freeman, sued under the

FTCA.  In attempting to narrow the issue, the court stated

> '[I]t is the nature of the conduct, rather than the status of the actor, that governs
> whether the discretionary function exception applies in a given case.' *Id* . (*quoting
> United States v. Varig Airlines*, 467 U.S. 797, 813 (1984)). In examining the
> nature of the challenged conduct, a court must first consider whether the conduct
> involves an element of judgment or choice for the acting employee. *Id. (citing
> Dalehite v. United States*, 346 U.S. 15 (1953)). The discretionary function
> exception will not apply when a federal statute, regulation, or policy specifically
> prescribes a course of action for an employee to follow. *Id.*  In this event the
> employee has no rightful option but to adhere to the directive. *Id* .

*Id.* at *5.   The Louisiana court further stated

> [i]n particular, Plaintiffs must identify a specific *mandatory* directive that
> Defendants had a clear duty under federal law to perform.  And if the specific
> mandatory directive nevertheless involves an element of judgment, then
> application of the discretionary function exemption will turn on whether the
> officials making that judgment permissibly exercised policy choice."

*Id.* at *6.

The issue presented in *Freeman* that is relevant to the issue at hand was whether the

discretionary function exception applies where a Plaintiff brings an FTCA claim concerning the

government's response to Hurricane Katrina.  Applying the discretionary analysis test enunciated

in *Berkovitz v. United States*, 486 U.S. 531, 536 (1988), the Louisiana court dismissed the FTCA

claim for lack of subject matter jurisdiction.  In doing so, the court found that

> the types of actions being challenged in this lawsuit are the types of actions that
> Congress intended to shield from liability under both the Stafford Act and the
> FTCA.  One might contend that the federal decisions made in conjunction with
> Hurricane Katrina demonstrated nonchalance and/or incompetence on the part of
> those involved.  One can only speculate whether these mistakes caused the tragic
> deaths of the Decedents.  Even assuming that the Government's mistakes caused
> these deaths, Congress has not exempted such claims from the discretionary
> function exception. This Court is very sympathetic to the Plaintiffs for the loss of
> their loved ones, however, this Court is prohibited from changing the laws that
> Congress has enacted.  As such, the Court lacks authority to award money

> damages for claims in which the plaintiffs are not legally entitled. Because
> Plaintiffs have not identified a non-discretionary directive that Defendants failed
> to follow, no waiver of sovereign immunity applies. Plaintiff's Stafford Act and
> FTCA claims against the United States and the remaining defendants in their
> official capacities must be dismissed for lack of subject matter jurisdiction.

*Id.* at \*8. Thus, even if this case is transferred to Louisiana, Plaintiff is unlikely to prevail in his

theory that the United States is liable for the loss of his personal property that occurred in the

aftermath of Hurricane Katrina. Fifth Circuit precedents are generally generous in the breadth

they give to the discretionary function exemption. *See Garza v. United States*, 161 Fed. App.

341, 343 (5th Cir. 2005) (if there is no policy mandate directing a specific course of action, and if

the judgment is "grounded in social, economic, or political policy . . . the discretionary function

exemption applies and the claim is barred."). Significantly, the Fifth Circuit Court of Appeals

has even noted, in a case that also involved a detention center, that the acts of prison

administrators dealing with an emergency should be granted deference. *See Buchanan v. United

States*, 915 F.2d 969, 972 (5th Cir. 1990). Even so, as the Beemer declaration attests, no ICE

officials were involved in the evacuation or in the decision regarding whether detainees could

take personal property with them during the evacuation. *See* Def. Exh. 8. However, even if ICE

officials had been involved, Plaintiff has failed to identify any non-discretionary directive that

Defendants failed to follow that resulted in Plaintiff's loss of personal property. See Def. Exh.

14, Decl. of Scott Whitted *("*Neither the INA nor the regulations impose any mandatory duties

upon ICE officials with respect to the evacuation of immigration detainees from detention

facilities for any reason, including an imminent natural disaster."). Therefore, because there is no

non-discretionary directive that Defendants failed to follow, there is no waiver of sovereign

immunity.

In another recently decided case, *Macia v. U.S.*, 2007 WL 187480 (ND Fla. 2007), plaintiff, incarcerated at a correctional center operated by an independent contractor, filed claims under the FTCA for his alleged loss of property that occurred after he was not permitted to take personal property, including legal papers, during his evacuation that occurred as a result of Hurricane Ivan. The court found that

> [u]nder the exigent circumstances of the evacuation, in light of the conditions described by plaintiff, it would appear that a [government] decision to evacuate the prisoners promptly, leaving transport of personal property for a later time, would fall squarely within the discretionary function exception, and this is what plaintiff claims the [government] did.

*Macia* at *5. Thus, Plaintiff's claims that he should have been permitted to take his personal property with him when he evacuated, and that Defendants are now liable for the loss of his property, must fail. As in *Macia*, the evacuation of the detainees was the first priority, and evacuating their belongings was second. *See* Def. Exh. 8, Decl. of Scott Beemer. Any decision to evacuate detainees first and their belongings later would clearly fall within a permissible public-policy consideration.

In *Macia*, the court's analysis would have ended here, except that the government alleged that plaintiff had been permitted to evacuate with his personal items. Therefore, the court went on to analyze the plaintiff's claim under the "detention of goods" exception.[6] This FTCA exception precludes "[a]ny claim arising in respect of . . . the detention of any goods or merchandise by any officer of the customs or excise or any other law-enforcement officer." *See* 28 U.S.C. § 2680(c). The Supreme Court has interpreted this exception broadly to include "any claim 'arising out of' the detention of goods . . . includ [ing] a claim resulting from the negligent

---

[6]     *See* 28 U.S.C. § 2680(c).

9

handling or storage of detained property." *Kosak v. United States*, 465 U.S. 848, 854 (1984).

Applying this exception, the *Macia* Court found that

> [t]aking the facts in the light most favorable to the plaintiff, that his property was
> under custodial control of the U.S. Marshals and that it was lost or destroyed due
> to the Marshall's refusal to allow him to take the property with him during the
> evacuation, the detention of goods exception applies and his claim must be
> dismissed for lack of subject matter jurisdiction. [Further] [e]ven if neither of the
> aforementioned legal exceptions apply, plaintiff's claim fails because he has not
> alleged the factual basis for a cause of action for negligence under Florida law.
> *5-6.

Thus, applying the most relevant case law to the facts in this case, Plaintiff's claims

would likewise fail under the detention of goods exception, if he is alleging that his personal

property was negligently handled or stored.

In a third case, *Legree v. US*, 2006 WL 2190580, *5 (N.D. Fla. 2006), an incarcerated

plaintiff filed suit under the FTCA after her property, which had been stored in a warehouse, was

destroyed in a tornado during Hurricane Ivan.  The court found that the United States was not

liable under a theory of negligence, and dismissed the case for lack of subject matter jurisdiction.

The court noted that "the decision of when and whether to place an inmate's property into an

alternate location for longer term storage is within the discretion of institution staff" and

therefore shielded the government from liability. *Id.* at *4-5.  Further, the court found that the

plaintiff could not prevail even on a claim of negligence, as the plaintiff failed to demonstrate

either a breach of duty or causation. *Id.* at*5.  The court observed that the government had not

caused the loss of plaintiff's property, and that

> [t]he parties have not cited, and this court's research did not uncover, any case in
> which the government has been held liable under the FTCA for an act of nature
> such as a tornado, which is neither forseeable nor predictable, nor under [the
> government's] control. . . . the court does not find that failure to sort and move
> inmate property from one location to another with what appeared to be a category

V hurricane bearing down on the region to be negligent or otherwise unreasonable.

*Legree* at *5.

Under Louisiana law, in order to prevail on a claim of negligence, Plaintiff must prove that

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of the duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element)." *Roberts v. Benoit*, 605 So.2d 1032, 1051 (La.1992)(*on reh'g*) (*citing Fowler v, Roberts*, 556 So.2d 1, 4 ) (La.1989).

*Underwriters at Lloyd's London v. OSCA, Inc.*, *Slip Copy*, 2006 WL 941794, *14

(C.A.5 (Tex.) 2006).

Here, Plaintiff cannot prevail against the United States under a negligence theory because Plaintiff has not alleged that the Defendants breached a specific duty under Louisiana law.  If Plaintiff alleges that Defendants had a duty to allow the detainees to take their belongings with them during the evacuation, the Plaintiff has failed to demonstrate how a decision to give first priority to the evacuation of the detainees, and evacuate detainees' personal property at a later time, breached any duty.

**V.    The Only Sum-Certain Specified in Plaintiff's Standard Form 95, Claim for Damage, Injury or Death, and in Plaintiff's Complaint, is  $4,459.51.**

In the event that Plaintiff's claim is not dismissed, Plaintiff should be limited to a total claim of $4,459.51.  Section 2675(a) of the FTCA requires that a claimant file (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim.  *GAF Corp. v. United States*, 818 F.2d 901, 919 (D.C. Cir.

11

1987).  Plaintiff's prayer for relief states that "Plaintiff demands judgment against Defendant in

the sum of $4,459.51, and whatever it deems fit to apply to the "priceless items"[7] itemised *(sic)*

in his declaration exhibit C. and costs."  Compl.at 4 ¶ 3.  Section 8 of Plaintiff's Form 95 states,

in part "the section termed "priceless" may be replaced at a total cost of $500 if I am not

deported, but could escalate to $3,000 to $4,000 due to logistics."  A contingent claim is not a

sum-certain.  Further, it is unclear whether a detainee would have even been permitted to keep

over $8,000 worth of personal items at the PPDC.  Thus, the only sum-certain alleged in

Plaintiff's SF 95 and in Plaintiff's Complaint is $4,459.91.  Compl at 4 ¶ 3; Plaintiff's Exh. C,

Box 12d.

---

[7] Plaintiff lists twelve "priceless" items including an ordination certificate, MBA degree from
the University of Colorado, marriage certificate, daughter's birth certificate, wife's birth certificate,
certificate of incorporation, ministry, character attestation letters from Christian ministries, disks of
legal briefs and correspondence, Local Rules for the Third and Fifth Circuits, "indispensable records
of exhibits and motions, and legal records accumulated since 1996.

**Conclusion**

For the foregoing reasons, this case should be dismissed or, alternatively, transferred to the Eastern District of Louisiana.

Dated: July 6, 2007                            Respectfully  submitted,

                                    _____Jeffrey A. Taylor_____
                                    JEFFREY A. TAYLOR, D.C. BAR # 498610
                                    United States Attorney

                                    _____Rudolph Contreras_____
                                    RUDOLPH CONTRERAS, D.C. BAR #  434122
                                    Assistant United States Attorney

                                    _____s/Sherease Louis_____
                                    SHEREASE LOUIS
                                    Special Assistant United States Attorney
                                    United States Attorney's Office
                                    555 4th Street, N.W.
                                    Washington, D.C. 20530

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMBROSE O. ESOGBUE,** | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 06-1895 (RMC) |
| | ) |
| **DEPARTMENT OF HOMELAND SECURITY,** | ) |
| | ) |
| and | ) |
| | ) |
| **IMMIGRATION AND CUSTOMS ENFORCEMENT,** | ) |
| | ) |
| Defendants. | ) |
| | ) |

### Certificate of Service

I hereby certify that I caused a copy of the foregoing Defendants' Reply to Plaintiff's

Opposition to Defendants' Motion to Dismiss to be served upon *pro se* Plaintiff by first class

mail addressed to:

**AMBROSE O. ESOGBUE**
c/o Mrs. Jill Esogbue
10947 East 61st Street S
Apartment # 1746
Tulsa, OK 74133

on this 6th day of July, 2007.

Respectfully submitted,

_/s Sherease Louis_____
SHEREASE LOUIS
Special Assistant United States Attorney
555 Fourth St., N.W.,
Washington, D.C. 20530
202-307-0895/ FAX 202-514-8780
sherease.louis@usdoj.gov

**UNITED STATES DISTRICT COURT**
**DISTRICT OF DISTRICT OF COLUMBIA**

Ambrose O. Esogbue,

       Plaintiff,

    v.                            Docket No. 06-1895

Department of Homeland Security,
et al.,

       Defendants

## DECLARATION OF SCOTT BEEMER

1. I am a Detention Operations Supervisor with the Department of Homeland Security, U.S. Immigration and Customs Enforcement (ICE), Office of Detention and Removal Operations (DRO), San Antonio Field Office. I am the "Mr. Beemer" that Mr. Esogbue names in his Opposition to Defendant's Motion to Dismiss.

2. Although I do not remember the date, shortly after Hurricane Katrina struck the New Orleans area I went to the Tensas Parish Detention Center and met with immigration detainees who had been evacuated there from the Plaquemines Parish Detention Center. At the time, I was assigned to DRO's New Orleans Field Office. Anthony Smith, who is employed by the Plaquemines Parish Sheriff's Office as the Deputy Chief for Detention, accompanied me.

3. We had been informed that some of the detainees evacuated from Plaquemines to Tensas wanted to file damage claims for personal property they allegedly lost during the evacuation. Mr. Smith and I handed out claim forms they could use for that purpose.

4. At no time did Mr. Smith or I promise or guarantee that the United States government would acknowledge liability for the allegedly lost property or would pay any claims the detainees submitted. We did not have the authority to do so. Furthermore, the DRO Field Office in New Orleans does not adjudicate damage claims; we simply forwarded through proper channels the claims we received.

5. The highest-ranking DRO official in New Orleans is the Field Office Director (FOD). He ordered the relocation of the ICE detainees from Plaquemines as the hurricane approached, but no ICE employees were involved in the actual evacuation.

GOVERNMENT
EXHIBIT
P

6. ICE officials did not instruct Plaquemines officials to tell the detainees they could not take their personal property with them. If anyone told the detainees they could take only the property they had in their immediate possession, it would have been Plaquemines officials.

7. The main concern of ICE and Plaquemines officials was to save the lives of the detainees. My understanding is that Plaquemines officials hoped to evacuate the detainees' personal property separately but were unable to do so because of the onset and destructiveness of the powerful hurricane.

8. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 13, 2007.

Scott Beemer
Port Isabel Detention Center
27991 Buena Vista Blvd
Los Fresnos, Texas 78566

UNITED STATES DISTRICT COURT
DISTRICT OF DISTRICT OF COLUMBIA

Ambrose O. Esogbue,

       Plaintiff,

   v.                           Docket No. 06-1895

Department of Homeland Security,
et al.,

       Defendants

## SECOND DECLARATION OF SCOTT BEEMER

1. I am a Detention Operations Supervisor with the Department of Homeland Security, U.S. Immigration and Customs Enforcement (ICE), Office of Detention and Removal Operations (DRO), San Antonio Field Office. I am the "Mr. Beemer" that Mr. Esogbue names in his Opposition to Defendant's Motion to Dismiss. This is the second Declaration that I have signed in this suit.

2. In August 2005 I was assigned to DRO's New Orleans Field Office. The attached photos of the Plaquemines Parish Detention Center (PPDC) were taken on August 29, 2005, within approximately 45 minutes to one hour after Hurricane Katrina had cleared the area. The photos were taken from the Plaquemines Parish Sheriff's Office (PPSO) helicopter. I was a passenger in the helicopter. PPSO Chief Deputy Anthony Smith took the photos.

3. The PPDC sits on what is called the "East Bank." The east bank is surrounded by the Mississippi River and the Gulf of Mexico. The distance from the prison (exterior wall) to the river -- and the levee -- is approximately 150 yards. The levee broke during the hurricane, but the break is not visible in the photos.

4. I saw the PPDC when it was almost completely submerged, and I saw it after the water receded and the damage had occurred. As you can see from the pictures, the water is to the top of the building, and the building is approximately 20 feet high.

5. Amidst heavy rains accompanied by hurricane force winds in excess of 120 mph at initial landfall (with a Category 5 storm surge), the levees failed and broke, and the storm surge that flowed in was more than 20 feet high.


GOVERNMENT EXHIBIT

9

6. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2007.

Scott Beemer
Port Isabel Detention Center
27991 Buena Vista Blvd
Los Fresnos, Texas 78566

The photographs taken by the Plaquemines Parish Sheriff's Office's Chief Deputy, Anthony Smith, from a Plaquemines Parish Sheriff's Office helicopter, are available at the following web link:

**www.laapco.org/Links/Plaquemines%20Parish%20Photo's.ppt**

A hard copy of the photographs will be made available upon request. The photographs do not duplicate well for pdf purposes.



Bac

www.randmcnally.com                    Use the print feature in your browser to print this page

**110 Prison Rd**
**Braithwaite, LA 70040-3006**



**Find it in the 2007 Road Atlas**

•page 44, grid section I-10

All rights reserved. Use subject to license.

© 2007 randmcnally.com inc



**Bac**

[www.randmcnally.com](http://www.randmcnally.com)    Use the print feature in your browser to print this page

### 110 Prison Rd
### Braithwaite, LA 70040-3006



## Find it in the 2007 Road Atlas
•page 44, grid section I-10

All rights reserved. Use subject to license.

© 2007 randmcnally.com inc



**Bac**

www.randmcnally.com                        Use the print feature in your browser to print this page

**110 Prison Rd**
**Braithwaite, LA 70040–3006**



**Find it in the 2007 Road Atlas**

•page 44, grid section I-10

All rights reserved. Use subject to license.

© 2007 randmcnally.com inc



Bac

www.randmcnally.com                    Use the print feature in your browser to print this page

**110 Prison Rd**
**Braithwaite, LA 70040-3006**



## Find it in the 2007 Road Atlas
•page 44, grid section I-10

All rights reserved. Use subject to license.

© 2007 randmcnally.com inc

**U.S. Department of Justice**
Immigration and Naturalization Service

Order to Show Cause and Notice of Hearing

# ORDER TO SHOW CAUSE AND NOTICE OF HEARING
## (ORDEN DE PRESENTAR MOTIVOS JUSTIFICANTES Y AVISO DE AUDIENCIA)

*In Deportation Proceedings under section 242 of the Immigration and Nationality Act.*
*(En los trámites de deportación a tenor de la sección 242 de la Ley de Inmigración y Nacionalidad.)*

**United States of America:**
**(Estados Unidos de América:)**

File No. _____ A020 677 387
*(No. de registro)*

Dated _____ March 8, 1996
*(Fechada)*

In the matter of          Ambrose Onye ESOGBUE
*(En el asunto de)*                                                                      (Respondent)
Address          BSCC Interstate Unit, Route 2, Box 7                            *(Demandado)*
*(Dirección)*

          Big Spring, Texas  79720

Telephone No. (Area Code) _____
*(No. de teléfono y código de área)*

Upon inquiry conducted by the Immigration and Naturalization Service, it is alleged that:
*(Según las indagaciones realizadas por el Servicio de Inmigración y Naturalización, se alega que:)*

1) You are not a citizen or national of the United States;
*(Ud. no es ciudadano o nacional de los Estados Unidos)*

2) You are a native of ___Nigeria___ and a citizen of ___Nigeria___ ;
*(Ud. es nativo de)* Nigeria *(y ciudadano de)* Nigeria

3) You entered the United States at or near ___JFK Airport, N.Y.___ on or about ___October 11, 1969___
*(Ud. entró a los Estados Unidos en o cerca de)* JFK Airport, N.Y. *(el día o hacia esa fecha)*
                                                                                      11 de octubre de 1969

SEE ATTACHMENT PAGE(S) FOR ALLEGATIONS

(VEA PAGINA(S) ADJUNTA PARA LOS ALEGATOS)



GOVERNMENT
EXHIBIT
10

Form I-221 (Rev. 6/12/92) N

**U.S. Department of Justice**
Immigration and Naturalization Service

Order to Show Cause and Notice of Hearing

Continuation Sheet
*(Hoja complementaria)*

| | |
|---|---|
| Dated *(Fechada)* | March 8, 1996 |
| File No. *(No. de registro)* | A020 677 387 |

Respondent *(Demandado)*    Ambrose Onye ESOGBUE

**AND** on the basis of the foregoing allegations, it is charged that you are subject to deportation pursuant to the following provision(s) of law:
*(Y según los alegatos anteriores, se le acusa de estar sujeto a deportación de acuerdo con la(s) siguiente(s) disposicion(es) de la ley:)*

SEE ATTACHMENT PAGE(S) FOR CHARGES

(VEA PAGINA(S) ADJUNTA PARA LOS CARGOS)

**WHEREFORE, YOU ARE ORDERED** to appear for a hearing before an Immigration Judge of the Executive Office for Immigration Review of the United States Department of Justice at:
*(POR LO CUAL, SE LE ORDENA comparecer ante un juez de inmigración de la Oficina Ejecutiva de Revisión de Inmigración del Departamento de Justicia de los Estados Unidos en:)*

Address *(Dirección)* TO BE CALENDARED AND NOTICE PROVIDED BY THE OFFICE OF THE IMMIGRATION JUDGE. NOTICE WILL BE MAILED TO THE ADDRESS PROVIDED BY THE RESPONDENT.

On *(Fecha)* *(La Oficina del juez de inmigración enviara un aviso a la dirección facilitada por el demandado con la fecha de la audiencia.)*    At _____ .m. *(Hora)*

and show cause why you should not be deported from the United States on the charge(s) set forth above.
*(y mostrar motivos justificantes por cual no debería ser deportado de los. Estados Unidos por los cargos expresados anteriormente.)*

| | |
|---|---|
| Dated *(Fechada)* March 8, 1996 | Signature of Issuing Officer *(Firma del funcionario que la expide)* |
| City and State of Issuance Dallas, Texas *(Ciudad y Estado donde se expide)* | Nell Jacob, Assistant District Director for Investigation  Title of Issuing Officer *(Título del funcionario que la expide)* |

Form I-221 (Rev. 6/12/92) N    Page 3

This Order to Show Cause shall be filed with the Immigration Judge of the Executive Office for Immigration Review at the address provided below. You must report any changes of your address or telephone number in writing to this office:

Debe presentar esta Orden de Presentar Motivos Justificantes a la Oficina Ejecutiva de Revisión de Inmigración en la siguiente dirección. Debe notificar cualquier cambio de su domicilio o número de teléfono por escrito a:

## The Office of the Immigration Judge

---

### Certificate of Translation and Oral Notice

This Order to Show Cause ☒ was    ☐ was not    read to the named alien in the ___ENGLISH___ language, which is his/her native language or a language which he/she understands.

| Date | Signature | Printed Name and Title of Translator |
|---|---|---|

Address of Translator (If other than INS employee) or office location and division (if INS employee)

(If oral notice was not provided please explain)

| Manner of Service | Alien's Right Thumb Print |
|---|---|
| ☒ Personal Service to Alien | |
| ☐ Certified Mail - Return Receipt Requested | |
| ☐ Alien | |
| ☐ Counsel of Record | |

### Certificate of Service

This Order to Show Cause was served by me at BSC / BSCC on 03 14 19 96 at 1425 m.

Officer's Signature        Printed Name DAVID J KINNEAR    Title AGENT    Office DA2

REFUSED TO SIGN

Alien's Signature (acknowledgment/receipt of this form)
(Firma de extranjero/acuse de recibo)

---

### Request for Prompt Hearing and Waiver of 14-Day Minimum Period
### (Solicitud de audiencia inmediata y renuncia al plazo mínimo de 14 días)

To expedite determination of my case, I request an immediate hearing, and waive my right to the 14 day notice.
(Para agilizar la decisión sobre mi caso, solicito una audiencia inmediata y renuncio a mi derecho a un plazo mínimo de 14 días.)

Signature of Respondent
(Firma de demandado)

Date
(Fecha)

Form I-221 (Rev. 6/12/92) N

U.S. Department of Justice
Immigration and Naturalization Serv.                         Continuation Page for Form _____ I-221

| Alien's Name | File Number | Date |
|---|---|---|
| Ambrose Onye ESOGBUE | A020 677 387 | March 8, 1996 |

 At that time you entered as a nonimmigrant student;

(En ese momento Ud. entró como un no-inmigrante estudiante;)

 On September 24, 1974, your status was adjusted to that of a permanent resident;

(En el 24 de septiembre 1974, su condición fue ajustada a la de residente permanente;)

You were, on September 17, 1980, convicted in the Superior Court of New York, Queens County, for the offense of Possession of Marijuana, in violation of New York PL 110/221.30;        attempt

(Ud. resultó convicto el 17 de septiembre de 1980, en el Tribunal Superior de Nueva York, Condado de Queens, por el delito de Posesion de Marijuana, en violación de Nueva York PL 110/221.30;)

You were, on August 19, 1994, convicted in the United States District Court of Southern Texas, for the offense of Conspiracy to Defraud the United States, in violation of Title 18, United States Code, Section(s) 371;

(Ud. resultó convicto el 19 de agosto de 1994, en el Tribunal del Distrito de los Estados Unidos de Sur de Texas, por el delito de Conspiracion de Defrauder los Estados Unidos, en violación del Código de los Estados Unidos, Título 18, sección(es) 371;)

| Signature | Title |
|---|---|
| Neil Jacobs | Assistant District Director for Investigations |

6    of    7    Pages

Form I-831 Continuation Page (Rev. 6/12/92)

R-3

**U.S. Department of Justice**
Immigration and Naturalization Serv[...]                         Continuati[...] Page for Form _____ I-221

| Alien's Name | File Number | Date |
|---|---|---|
| Ambrose Onye ESOGBUE | A020 677 387 | March 8, 1996 |

6) You were, on August 19, 1994, convicted in the United States District Court of Southern Texas, for the offense of Wire Fraud, in violation of Title 18, United States Code, Section(s) 1343.

*(Ud. resultó convicto el 19 de agosto de 1994, en el Tribunal del Distrito de los Estados Unidos de Sur de Texas, por el delito de Defrauda de Telegrafía, en violación del Código de los Estados Unidos, Título 18, sección(es) 1343.)*

AND on the basis of the foregoing allegations, it is charged that you are subject to deportation pursuant to the following provision(s) of law:
*(Y según los alegatos anteriores, se le acusa de estar sujeto a deportación de acuerdo con la(s) siguinte(s) disposición(es) de la ley:)*

Section 241(a)(2)(B)(i) of the Immigration and Nationality Act (INA), as amended, in that, at any time after entry, you have been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in Section 102 of the Controlled Substances Act, 21 U.S.C. 802).

*(Sección 241(a)(2)(B)(i) de la Ley de Inmigración y Nacionalidad (INA), según enmendada, en que, en algún momento después de su entrada, Ud. ha resultado convicto de una violación de (o una conspiración o intento de violación) de alguna ley o reglamento de un Estado, de los Estados Unidos, o de un país extranjero referente a una sustancia controlada [según se define en la sección 102 de la Ley de Sustancias Controladas, 21 U.S.C. 802].)*

Section 241(a)(2)(A)(ii) of the Immigration and Nationality Act (INA), as amended, in that, at any time after entry, you have been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct.

*(Sección 241(a)(2)(A)(ii) de la Ley de Inmigración y Nacionalidad (INA), según enmendada, en que, en algún momento después de su entrada, Ud. ha resultado convicto de dos delitos referentes a bajeza moral que no provienen de un mismo esquema sencillo de conducta delictiva.)*

Section 241(a)(2)(A)(iii) of the Immigration and Nationality Act (INA), as amended, in that, at any time after entry, you have been convicted of an aggravated felony as defined in Section 101(a)(43) of the Act.

*(Sección 241(a)(2)(A)(iii) de la Ley de Inmigración y Nacionalidad (INA), según enmendada, en que, en algún momento después de su entrada, Ud. ha resultado convicto de un felonia agravada, según se define en la sección 101(a)(43) de la INA.)*

| Signature | Title |
|---|---|
| Neil Jacobs | Assistant District Director for Investigations |

_7_ of _7_ Pages

Form I-831 Continuation Page (Rev. 6/12/92)

R-2.

A. Esogbue A20677387                                                                    1

# THE IMMIGRATION COURT
United States Department of Justice
Executive Office for Immigration Review
1100 Commerce Street #4B41
Dallas, Texas, 75242

In the Matter of:                                    In Deportation Proceedings
    Ambrose O. Esogbue                              A20 677 387

Charge: INA Section 241(a)(2)(B)(i) Controlled substance violator
    And  Section 241(a)(2)(A)(ii) 2 or more CIMTs
    And  Section 241(a)(2)(A)(iii) Aggravated felony

For the Immigration Service :                        For the Respondent:
Mr. John Allums INS                                  Pro Se
Trial  Counsel, Dallas, Tx.

## DECISION AND ORDER OF THE IMMIGRATION JUDGE

On April 4, 1996, Ambrose Onye Esogbue of Nigeria became the subject of an Order to Show Cause (OSC) in deportation proceedings under the Immigration and Nationality Act. (INA). In it, he was charged with being a deportable permanent resident of the United States for 3 reasons listed in Section 241 of the Immigration and Nationality Act (INA). One was because he had been convicted for a controlled substance violation in New York in 1980. The second was for having been convicted for more than one crime involving moral turpitude and the third was for being an alien who has been convicted of an aggravated felony as the term is defined in the INA at Sec. 101(a)(43). Amendments to the OSC further clarified the charge of aggravated felony to include the subsections of 101(a)(43), "(M), (G) and (U)." It is the position of the government that all three cover his convictions in the U.S. District Court at Houston, Texas. The respondent went through a series of hearings before D.A. Rogers, I.J., who held on February 24, 1997 that he is deportable as charged and directed that Mr. Esogbue be deported to Nigeria.   Then, Mr. Esogbue commenced an appeal to the Board of Immigration Appeals which directed that a transcript of the earlier hearings be typed and filed with the BIA.   The tapes including the oral reasons for the judgment appeared to be missing. Therefore, the BIA remanded the case to Dallas to obtain a transcript or to create a reviewable record.   Since only one tape could be found, this required a repetition of a full and complete series of hearings, essentially _de novo_, in sessions conducted between March 5, 1999 and September 23, 1999.

AMENDED  --   Corrections on page 6.



GOVERNMENT EXHIBIT

SEP 3 0 1999

A. Esogbue A20677387

2

The respondent has since the remand steadfastly argued that the Immigration and Naturalization Service (INS) has to prove that he was convicted of a controlled substance offense in New York. He persistently claimed that it was so long ago that he cannot recall the events and if the accusation is true, the offense should be viewed as "time barred." He also claimed that because the crime, attempted possession of marijuana, was merely a misdemeanor, it cannot be regarded as the basis his deportation now. And he has asserted consistently from the commencement of proceedings back in April of 1996, that he should be allowed to escape deportation altogether through a waiver of grounds for exclusion under INA Sec. 212(c) or 212(h), but neither application has been filed for either waiver. And since March 5, 1999, he has indicated that he has no interest in filing an I-589 or an I-191.

The respondent is of the opinion that the judgment of convictions for wire fraud and conspiracy to defraud the United States in 1990 and 1991 cannot be held against him in deportation proceedings under INA Sec. 241(a)(2)(A)(iii) as aggravated felonies. And he has argued that the February 13, 1996 decision [Record p. 131] of the United States Court of Appeal affirming his March 22, 1994 conviction in Houston, Texas is not a "conviction" under the INA because it was not final when the OSC was issued; because he had applied to the United States Supreme Court for a Writ of Certiorari, which had not been adjudicated. He also contended that amendments to the INA which have modified the definitions of "conviction" and "aggravated felony" cannot be applied to him because of legal principles which prohibit retroactive application of laws.

The respondent has asserted that the allegations in his OSC as originally filed do not accurately inform him of the charges against him, particularly in reference to the 1980 New York conviction. He is correct in claiming that the OSC referred to the New York Court as a "Superior Court" and alleged as fact that he had been convicted of possession of marijuana. However, the OSC correctly informed the respondent that the INS viewed him as being deportable under INA Sec. 241(a)(2)(B)(i). Several times before and after March 5, 1999 during these protracted proceedings the respondent has been provided with the abstract of his conviction which accurately informed him where the Service believed he had been convicted and those documents reflect that the court is properly referred to as a New York Supreme Court. He has been told that the trial courts in New York are called Supreme Courts. The documents also show that he was convicted of attempted possession of marijuana. Whatever confusion this may have caused the respondent has been effectively cured by the time he has had to have someone go to the court and verify his contention that the papers are false or to discover that the documentary evidence of his conviction in New York is genuine. The respondent knew exactly what the Service thought it could prove long in advance of his final hearing on issues of deportability. To delay these proceedings further to correct this minor error would be fruitless. The INS can continue to amend the charges as often as it deems necessary as long as these proceedings are not administratively final. 8 C.F.R. 240.48(d). If I terminated proceedings because of this one procedural irregularity, it might well acquiesce and immediately re-institute proceedings in a removal action. The irregularity complained of here would not warrant dismissal with prejudice.

A. Esogbue A20677387                                                           3

## EVIDENCE OF DEPORTABILITY

The Record of Proceedings (ROP) is heavily burdened with redundant materials. The respondent submitted many documents addressed to issues both in the deportation and bond proceedings, so some of those materials are properly in the deportation record. Some of the documents are clearly redundant, but they have been retained in the ROP. To facilitate discussions about the documents while this was considered on remand, all pages in the deportation ROP have been numbered from the OSC to the last document placed in the ROP prior to the submission of the respondent's appeal. An index of these documents which were numbered R-1 through R-161 is attached to this decision as Appendix A and made part hereof by reference. The amendments to the OSC have been placed in the ROP with the OSC for the convenience of reviewers. Also attached is Appendix B, a chronology of relevant events. Although the transcript will be lengthy, there was very little sworn testimony taken.

The declaration of Mr. Esogube which starts on page R-145 is consistent with all of his other declarations in various motions. In it, respondent clearly admitted that he is a Nigerian who came to the United States as a student in 1969 while he was 23 years old. He married a citizen of the United States in 1973 and became a legal resident of the United States in September of 1974 through an adjustment of his status based on his marriage. He is the parent of an adult daughter who was born in the United States. Related to the accusation by the INS that he is deportable, the respondent does not clearly admit anything else. He has, however, repeatedly asserted in his motions and declarations that the judgment of the United States District Court on August 19, 1994 was not final because he still had an application for a Writ of Certiorari, pending, challenging that judgment against him. I have taken those assertions to constitute an admission that the respondent is the person against whom the United States District Court made an adjudication of guilt. All other significant facts are deemed by the court to be contested by the respondent.

The circumstances of the 1980 events related to the INA 241(a)(2)(B)(i) charge are evidenced by documents from two sources which are quite independent of each other, plus the respondent's testimony on September 9, 1999. The earliest documents are from the Supreme Court of New York in evidence on pages R-136 to 138. Concerning these, the respondent has accused the Service of submitting false documents in support of this charge and the Service responded by submitting another "Certificate of Disposition," another indictment and another copy of a sworn felony complaint dated March 11, 1980 supporting the indictment. Collectively these have been identified as Exhibit A. The new documents were submitted on May 7, 1999 and bear a discernible dry seal of the Clerk of the court on the "Certificate of Disposition." The indictment has a barely discernible and very faint copy of a signature over the typed words "District Attorney." The respondent contends that these documents in Exhibit A are not properly certified.

The fact that there was a charge made against the respondent in 1980 was admitted when he testified under oath on September 9, 1999. He said that he had managed to remember that when he returned from a trip abroad in 1980 he had been accused of having marijuana in his baggage. He was arrested, allowed to get counsel, made bond, and returned to Denver, Colorado. He now says that he never returned to the New York court and everything was concluded through his attorney. He seems to be of the opinion that the case could not have been concluded without his in person participation. No evidence has been tendered to support that opinion. Testimony was taken, however, from a Service employee to show that the conviction records originally placed in the record were obtained by the Service from the Bureau of Prisons records when he was transferred to INS custody by the Bureau of Prisons.

All three charges, including the 1980 New York charge, are supported by evidence in the form of documents from the second and more recent source. The INS exhibit in the ROP at pages R-66 to R-81 is a United States District Court Pre-sentence Investigation Report. Paragraph 44 thereof reflects that the author of the report found that the respondent had been convicted in 1980 in New York for Attempted Possession of Marijuana. Evidence of the overall disposition of the prosecution in the United States Court, including objections to the findings of the District Judge about the Pre-sentence Report, is in the decision of the U.S. Court of Appeal in documents at R-100 to R-133. The 1980 judgment was viewed as a conviction and counted against the respondent in sentencing.

Concerning the charges under INA Sec. 241(a)(2)(A)(ii) and 241 (a)(2)(A)(iii) the factual scenario behind the 1994 conviction by the United States was defined elsewhere and is not subject to modification in this forum. Matter of Khalik, 17 I&N Dec. 518 (BIA 1988); Matter of Danesh, 19 I&N Dec. 669 (BIA 1988); Zinatti v. INS, 651 F.2d 420 (5th Cir. 1981). The Court of Appeal clearly described the facts of the entire scheme and the amount of money derived from the illegal conduct by each defendant. It is included in this ROP at pages R-100 to R-131, [Govt. Ex. 6]. The facts are explained with greatest specificity in the court's analysis of sufficiency of the evidence supporting the jury findings. See R-100 to R-114. The court affirmed the conviction of this respondent for his 22 month long involvement in defrauding 5 individuals and held him responsible for $980,000.00 of their combined loss of $1,205,000.00. See R-101 to R-103. In respondent's 1999 testimony, he said the combined loss was greater than $1,205,000.00.] The court's mandate is in the ROP [Govt. Ex. #5]. It was published as a table case at 79 F.3d 1145 (5th Cir. 1996). He was sentenced to 37 months in prison. See pages R-8 to R-14 in the ROP [Gov. Ex. # 1].

A. Esogbue A20677387                                                                5

## FINDINGS OF THE IMMIGRATION JUDGE CONCERNING DEPORTABILITY

The respondent has asserted that the evidence that he was convicted of a deportable offense under INA Sec. 241(a)(2)(B)(i) in effect on March 8, 1996 is not sufficient and he claims that it is "time barred" and merely a misdemeanor. The respondent has claimed until very recently that he did not recall the 1980 events and he relies on the fact that the INS bears the burden of proof to support his assertion that he should not be deported for any reason.

The evidence supporting the INS position is clear, unequivocal, convincing and admissable. When the respondent was sentenced for his most serious offenses in criminal proceedings in a United States District Court, he was found to be a person who had previously been convicted for attempting to possess marijuana in Queens County, New York. (See R-74.) The findings of the U.S. District Court concerning the New York conviction were made in conformity with Rule 32 of the Rules of Criminal Procedure for the United States District Courts which allowed the respondent to contest the findings of fact. He did not contest the assertion that he had been convicted for attempting to possess marijuana in New York in 1980 and that is a finding which cannot be contested again in these proceedings because the findings of the United States District Court have been approved by the 5th Cir. Court of Appeal.

Concerning the admissibility of the evidence about the 1980 conviction in New York, I find that the documents from the New York Supreme Court are "an abstract of a record of conviction" and admissible under INA Sec. 240(c)(3) and 8 C.F.R. 3.41(d) and they properly support the Sec. 241(a)(2)(B)(i) charge. The Pre-Sentence Investigation Report (PSI) which sheds light on the same 1980 conviction is "...other evidence that reasonably indicates the existence of the criminal conviction..." and a record acquired from a penal institution. It is admissible under INA Sec. 240(c)(3) generally and 240(c)(3)(B)(vii) and 8 C.F.R. 3.41(d) and it also supports the INA Sec. 241(a)(2)(B)(i) charge. Since there is no "time bar" or "misdemeanor exception" to this charge, I find that the evidence of record in these deportation proceedings establishes a prima facia and unrebutted case on behalf of the Immigration and Naturalization Service (INS) that the respondent, Ambrose Esogbue, is deportable under INA Sec. 241(a)(2)(B)(i).

A. Esogbue A20677387                                                              6

    Other than to assert that the criminal proceedings in the United States District Court related to allegations numbered 8 and 9 in the Order to Show Cause were not final, the respondent has not clearly contested the charge under INA Sec. 241(a)(2)(ii). Contrary to his declarations, his writ application had been acted upon and denied by the Supreme Court of the United States on June 10, 1996 in U.S. v. Martin, ( & Esogbue) 116 S.Ct. 2514 (1996). The judgment of the 5ᵗʰ Cir. Court of Appeal affirmed the respondent's convictions for multiple crimes involving moral turpitude before the INS issued the OSC against him. As of February 13, 1996, the convictions in the United States District Court were final notwithstanding his subsequent application for a *Writ of certiorari.* In re Onyido, I.D. # 3379 (BIA 1999). The criminal prosecution became final when there was no longer an appeal of right pending or available. *Ibid.* It was final when the OSC was issued under *Matter of Ozkok,* 19 I & N Dec. 546 (BIA 1988) and it is today also final under *In re Punu,* I.D. # 3364 (BIA 1998).

    The conduct of the respondent and his co-defendants is described in great detail in the decision of the Court of Appeal and need not be repeated here. (Govt. Ex. #6 at R-100.) Based on those findings of fact, I find that it is clear that several persons were victims of fraud and relieved of substantial amounts of money on different dates between October 1990 and August 1992. As a matter of law, I find that the fraud crimes for which the respondent was convicted are crimes involving moral turpitude (CIMTs) and crimes that did not arise from a single scheme. Matter of Adetiba, I.D. #3177 (BIA 1992); Balogun v. INS, 31 F.3d 8, (1ˢᵗ Cir. 1994). The respondent had ample time to withdraw from the criminal activity before all of the victims had been fleeced. Any crime involving fraud is a crime involving moral turpitude, Burr v. INS, 350 F.2d 87, 91 (9ᵗʰ Cir. 1965). I also find that for these multiple CIMTs the respondent was sentenced to more than a year in prison and actually served 37 months. The crimes included in the INA Sec 241(a)(2)(A)(ii) charge were, without regard to the date of their commission, otherwise covered by Section 241 (a)(2)(A)(i). Thus, I find that the INS has established a prima facia and unrebutted case of deportability against the respondent under INA Sec. 241(a)(2)(A)(ii).

    The same fraud offenses committed in 1990 and 1991 which I have held to be crimes involving moral turpitude, fall within the scope of INA Sec.101(a)(43) which defines aggravated felonies and includes section (M)(i) which was added to the INA by the Immigration and Naturalization Technical Corrections Act of 1994 (INTCA), effective October 25, 1994. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) ) effective April 24, 1996 modified effective dates of aggravated felonies listed in INA 101(a)(43). Recently, the BIA has addressed the effect of The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRAIRA) and held that an alien convicted of an aggravated felony is deportable regardless of the date of his conviction if he was placed in deportation proceedings on or after March 1, 1991, and if the crime falls within the aggravated felony definition. In Re Lettman, I.D. #3370 (BIA Nov. 5, 1998). See also, In re Basil Onyido, I.D. 3379 (BIA Mar. 4, 1999). Thus, I am compelled to find and do find

*Correction to your decision.*

A. Esogbue A20677387                                                                          7

that the respondent is also an alien convicted of an aggravated felony and subject to deportation under INA Sec. 241(a)(2)(A)(iii).

The contentions of the respondent that IIRAIRA cannot be applied to him concerning his deportability are inconsistent with the jurisprudence in the 5th Circuit. See, <u>Moosa v. INS,</u> #96-60821, ___ F.3d. ___ (5th Cir. 4/2/99). There the Court held that "it is well settled that Congress has the authority to make past criminal activity a new ground for deportation."

## RELIEF

The respondent's situation is unusual. He has neither conceded deportability under any section of the Immigration Act nor applied for any relief.

Since proceedings began the respondent was given the forms required to apply for a waiver under Section 212(c) as it was in effect when these proceedings began. After March 5, 1999, he has been provided with both an I-191 and an I-589. He was allowed time to submit either or both. He indicated that he would not file an I-589. Later, he was told to be ready to file for the Sec. 212(c) waiver on September 9, 1999. He was not ready to file it on that date, so he was granted more time for that purpose and told to file it on September 23, 1999, and he was told that when he filed it, the court would schedule a date for the relief hearing and give him time to prepare for that hearing. On September 23, 1999 the respondent appeared without an application for relief and petulantly declared that he would not file it. I thereupon informed him that I would order him deported and provide him with written reasons for my order.

There has been only one potential avenue for relief that has not been discussed between the respondent and the Court, voluntary departure. This was not discussed because his incarceration makes him presently ineligible for the required good moral character finding and no written application is needed. See, INA Sec. 101(f)(7).

Because of the respondent's refusal to file for relief, I need not discuss whether or not he is eligible for relief in the form of a Section 212(c) waiver or relief under any other provision in the Act.

A. Esogbue A20677387                                                                 8

## CONCLUSION

In summary, the evidence that the respondent is an aggravated felon under the Act as it has been changed since the respondent was served with his Order to Show Cause is admissable, clear and convincing beyond any doubt. There is no doubt that he was convicted of an offense presently considered to be an aggravated felony. The only uncertainty involved pertains to ongoing litigation concerning the retroactive application of AEDPA and IIRIRA. Therefore, under the prevailing precedent decisions, I am obliged to and do hereby order the deportation of the respondent to Nigeria for the reason that he is an aggravated felon.

The respondent's convictions also clearly make him deportable without regard to any changes to the Immigration and Nationality Act contained in the Antiterrorism and Effective Death Penalty Act of 1996 or in the Illegal Immigration Reform and Immigration Responsibility Act of 1996. He is therefore, also ordered deported from the United States to Nigeria for the reasons charged in his Order to Show Cause concerning INA Sections 241(a)(2)(B)(1) and 241(a)(2)(A)(ii) as a controlled substance violator and as an alien who has committed more that one crime involving moral turpitude.

September 29, 1999                    Edwin R. Hughes        Immigration Judge
DALLAS, TEXAS

A. Esogbue A20677387                                                         9

## APPENDIX A

### INDEX OF THE RECORD UP TO COMMENCEMENT OF APPEAL

Page
1   Order to Show Cause.
8   Judgment in a Criminal Case, U.S. Dist. Court 8/19/94     [Govt. Ex. I]
15   Declaration of A.O. Esogbue & Motion for Bond and Change of Venue.
19   Request for documents, FOIA.
21   Request for bond and change of venue.     (Can't recall NY prosecution)
30   Declaration of A.O. Esogbue in support of Motion for bond and change of venue.
34   Request for documents, FOIA to Superior (sic) Court of Queens Co., N.Y.
35   Request for documents, FOIA to INS investigations on 4/11/96
36   Motion for bond and change of venue..
44   Declaration of A.O. Esogbue regarding bond and change of venue.
47   Notice of Appeal concerning bond and change of venue.
49   Motion for transcript of exclusion hearing.
52   Motion to terminate proceedings, lift detainer, change venue and bond.
55   Supplemental motion to terminate, change venue and bond.
61   Motion to proceed in forma pauperis concerning application for writ of certiorari
        in the Supreme Court of the United States.
65   Certificate of disposition  of prosecution in Supreme Court in Queens Co. N.Y.
        concerning attempted possession of marijuana on 9/17/1980. [Govt. Ex. #4]
66   Presentence investigation report used by U.S.Dist. Court .[ Govt. Ex. #4].
82   Decision of U.S. Court of Appeals, U.S. v. Boothe, [Govt. Ex. #2].
94   Change of Venue from Big Springs, Tx. to Dallas, Tx.
98   Correspondence from the Clerk of the United States Supreme Court. [Govt. Ex. #7]
100  Decision of U.S. Court of Appeal, U.S. v. A.O. Esogbue. [Govt. Ex. # 6]
132  Mandate of U.S. Court of Appeals regarding U.S. v. Boothe.
133  Mandate of U.S. Ct of Appeal regarding U.S. v. A.O. Esogbue, et.al. [Govt Ex.#5]
        conviction affirmed.  79 F.3d 1145 (5th Cir. 1996), cert.den. 116 S.Ct. 2514 (1996).
136  Affidavit of U.S. Custom Officer at JFK Airport regarding 3/11/80
137  Indictment, Supreme Court of Queens Co, N.Y.  1st degree possession of marijuana
138  Certificate of disposition issued by Clerk of Supreme Court of Queens Co. N.Y.
        Issued 12/20/96, conviction for attempted possession of marijuana. [Govt. Ex. $5]
139  INS memo brief to I.J. regarding deportability, by Mrs. Agnello INS TA
144  Declaration of A.O. Esogbue  (Admits being LPR, Married in 1973, parent & entry
        as student in 1969)
146  Supplimentary (sic) motion to terminate, lift detainer, change venue and bond.
152  Respondent's response to INS brief of Mrs. Agnello.
160  Bond order dated 1/23/97.
161  Memorandum Order of Immigration Judge dated February 24, 1997.

A. Esogbue A20677387

10

## APPENDIX B

| | |
|---|---|
| Oct. 11, 1969 | Respondent entered United States as non-immigrant student. |
| Aug. 25, 1973 | Respondent married a citizen of the United States. |
| Sept. 24, 1974 | Respondent's status was adjusted to that of legal permanent resident. |
| | |
| Mar. 11, 1980 | Attempted possession of marijuana in New York committed. |
| Sept. 17, 1980 | Sentence imposed for attempted possession of marijuana in New York. |
| | |
| Oct. 17, 1990 to Aug. 20, 1992 | Federal offenses committed. |
| | |
| Jan. 31, 1994 | Respondent indicted by U.S. Grand Jury. |
| Apr. 20, 1994 | Respondent found guilty by jury in U.S. Dist. Court. |
| Aug. 19, 1994 | Judgment in Criminal Case signed by U.S. Dist. Judge. |
| | |
| Oct. 25, 1994 | Immigration & Naturalization Technical Corrections Act (INTCA) enacted adding sec. (M)(i) to INA 101(a)(43) concerning convictions on or after 10-24-94. |
| | |
| Feb. 13, 1996 | U.S. Court of Appeal affirmed respondent's conviction in U.S. court. 79 F.3d 1145 (5th. Cir. 1996). |
| | |
| Mar. 8, 1996 | Order to Show Cause issued concerning respondent. |
| | |
| Apr. 24, 1996 | Effective date of Antiterrorism and Effective Death Penalty Act of 1996, AEDPA. |
| | |
| June 10, 1996 | Writ Application denied by U.S. Supreme Court, sub nom. U.S. v Martin, 116 S. Ct. 2514 (1996). |
| | |
| Sept. 30, 1996 | Effective date of Illegal Immigration Reform & Immigrant Responsibility Act of 1996, IIRAIRA |
| | |
| Dec. 24, 1996 | Respondent released from U.S. Bureau of Prisons to INS. |
| | |
| Jan. 23, 1997 | Immigration Judge Rogers ordered respondent deported. |

U.S. Department of Justice
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:  A20 677 387 - Dallas

Date:

MAY 1 2 2000

In re: AMBROSE ONYE ESOGBUE

IN DEPORTATION PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:  Pro se

CHARGE:

Order:     Sec.  241(a)(2)(B)(i), I&N Act [8 U.S.C. § 1251(a)(2)(B)(i)] -
           Convicted of controlled substance violation

           Sec. 241(a)(2)(A)(ii), I&N Act [8 U.S.C. § 1251(a)(2)(A)(ii)] -
           Convicted of crimes involving moral turpitude

           Sec. 241(a)(2)(A)(iii), I&N Act [8 U.S.C. § 1251(a)(2)(A)(iii)] -
           Convicted of aggravated felony

Lodged:    Sec.  241(a)(2)(A)(iii), I&N Act [8 U.S.C. § 1251(a)(2)(A)(iii)] -
           Convicted of aggravated felony

APPLICATION: Termination

GOVERNMENT
EXHIBIT
12

ORDER:

PER CURIAM. This case was last before this Board on appeal on October 30, 1998, where we noted that the record was missing the Immigration Judge's decision and a portion of the transcript. We remanded the record to the Immigration Judge, who between March 1999 and September 1999, conducted proceedings de novo. In a written decision dated September 29, 1999, the Immigration Judge reordered the respondent deported as charged. The respondent timely appealed the Immigration Judge's decision ordering him deported. The respondent's appeal is dismissed.

The record reflects that the respondent, a native and citizen of Nigeria, was convicted on September 17, 1980, for attempted possession of marijuana in violation of sections 110 and 221.30 of the New York Penal Law. The respondent was also convicted on August 19, 1994, of conspiracy to defraud the United States and wire fraud in violation of 18 U.S.C. §§ 371 and 1343.

As a result of these convictions the Immigration and Naturalization Service served the respondent with an Order to Show Cause and notice of hearing (Form I-221) charging him with deportability under sections 241(a)(2)(A)(ii) and 241(a)(2)(B)(i) of the Immigration and Nationality Act, 8 U.S.C. §§ 1251(a)(2)(A)(ii) and 1251(a)(2)(B)(i), as an alien convicted of a controlled substance offense and of crimes involving moral turpitude. The Service later amended the Order to Show Cause and added a charge of deportability pursuant to section 241(a)(2)(A)(iii) of the Act, as an alien convicted of an aggravated felony after admission. As noted above the Immigration Judge eventually found the respondent deportable as charged and ordered him deported from the United States.

The respondent makes numerous arguments on appeal. Essentially the respondent maintains that his deportation hearing was fundamentally unfair. The respondent argues that he was denied due process of law and that he is not deportable under such equitable doctrines as laches and res judicata. The respondent also appeals what he perceives to be an unlawful abdication of responsibility with regards to detention, custody, and venue. The respondent also argues that statutory and regulatory violations were perpetrated by both the Immigration Judge and the Service in his case.

The respondent challenges the Immigration Judge's findings as to custody. The respondent also challenges the application of section 440(c) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), which relates to detention and custody. Pursuant to federal regulations consideration of an application or request regarding custody or bond is to be kept separate and apart from any deportation hearing or proceeding. *See* 8 C.F.R. § 3.19(d). We will, therefore, not review the respondent's custody challenge in this decision.

We reject the respondent's contention that the Immigration Judge erred in allowing the Service continuances to procure evidence and effectively prosecute their case. We also reject the respondent's contentions on appeal that the Immigration Judge improperly applied section 440(d) of the AEDPA to his case. Section 440(d) of the AEDPA, amended section 212(c) of the Act. Like the Immigration Judge, we note that the respondent never applied for a waiver of inadmissibility under section 212(c) of the Act.

We, likewise, reject the respondent's contention that the Immigration Judge held a personal bias against the respondent and acted as a prosecutor in this case. Section 242(b) of the Act, 8 U.S.C. § 1252(b), specifically provides that the Immigration Judge shall "administer oaths, present and receive evidence, interrogate, examine and cross-examine the alien or witnesses." *See LeTourneur v. INS*, 538 F.2d 1368, 1370 (9th Cir. 1976), *cert. denied*, 429 U.S. 1044 (1977) (fifth amendment right to due process is not violated by Immigration Judge's multiple roles in deportation proceeding). There is no indication in this record that the Immigration Judge acted in a prejudicial or biased manner against the respondent.

2

A20 677 387

The respondent argues on appeal that the Immigration Judge erred in ordering him deported because his 1994 federal convictions were under direct appeal. We note that the record does not support the respondent's contention. The record contains a decision by the United States Court of Appeals for the Fifth Circuit affirming the respondent's conviction (Group Exh. 5). We also note that the United States Supreme Court in *Martin v. United States*, 116 S. Ct. 2514 (1996), denied the respondent's request for a writ of certiorari. The respondent's conviction, is therefore, sufficiently final for immigration purposes. *See Okabe v. INS*, 671 F.2d 863 (5th Cir. 1982).

The respondent maintains that the Immigration Judge failed to rule on his change of venue motion. The respondent's assertions that the Immigration Judge failed to adjudicate his motion to change venue is without merit. Likewise, the respondent's contention that the Service did not oppose his venue motion is contradicted by the record. The Service in fact did oppose the respondent's venue change motion. The Immigration Judge in a written decision dated May 17, 1999, considered the respondent's motion and denied his request to change venue. The Immigration Judge in his decision considered all relevant and appropriate issues related to the question of proper venue, and noted that the respondent failed to show significant factors to outweigh the Service's opposition to his motion for change of venue. Like the Immigration Judge we find that the respondent's request to accommodate his choice of a distant attorney did not outweigh concerns of administrative convenience, expeditious treatment of his case, and location of relevant witnesses associated with the prosecution the case. Consequently, we affirm the Immigration Judge's decision denying the respondent's motion to change venue. *See Matter of Rahman*, 20 I&N Dec. 480 (BIA 1992).

The respondent argues that he cannot be deported by the Service under the doctrine of laches. The Board has continually held that it is without authority to apply the doctrine of equitable estoppel against the Service so as to preclude it from undertaking a lawful course of action that it is empowered to pursue by statute and regulation. *See Matter of United Airlines Flight UA802*, Interim Decision 3396 (BIA 1999); *Matter of Hernandez-Puente*, 20 I&N Dec. 335 (BIA 1991). Accordingly, we find that we are without jurisdiction to terminate the deportation proceedings in this case on equitable grounds.

Lastly, the respondent argues that we are precluded from considering this case under the doctrine of res judicata. The doctrine of res judicata precludes a second suit on the same issue between the same parties where there has been a valid and final judgment on that issue. *See Medina v. INS*, 993 F.2d 499, 504 (5th Cir.), *reh'g denied*, 1 F.3d 312 (5th Cir. 1993). The respondent maintains that since a decision already existed in his case prior to this Board's 1998 remand, the Immigration Judge erred by conducting a de novo hearing and issuing a new written decision. The respondent fails to note, however, that there was never an administratively final order in this case. Therefore, the doctrine of res judicata does not apply. *See Matter of Fedorenko*, 19 I&N Dec. 57, 61 (BIA 1984).

The Immigration Judge in this case considered all the relevant facts and law in this case. We note that the respondent on appeal does not contest the Immigration Judge's findings that his convictions are deportable offenses. As such, we affirm the Immigration Judge's written decision ordering the respondent deported on the charges contained in the Order to Show Cause.

3

A20 677 387

Accordingly, the respondent's appeal is dismissed.


FOR THE BOARD



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 MAR 23  PM 1: 20

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

AMBROSE O. ESOGBUE

VERSUS

JOHN ASHCROFT, ATTORNEY
GENERAL, ET AL

CIVIL ACTION

NO. 04-3079

SECTION   "J"   (1)

### ORDER AND REASONS

Before the Court is a Petition for Habeas Corpus and Request
for Stay of Deportation.[1]  The petition is opposed by the
government.[2]  Petitioner claims that the retroactive application
of AEDPA § 440(d)[3] and INA § 240A[4] violates his rights under the

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 5.

[3] AEDPA § 440(d) amended INA § 212(c) to render aliens
convicted of an aggravated felony under INA § 241(a)(2)(A)(iii)
(now codified at 8 U.S.C. § 1227(a)(2)(A)(iii)), ineligible for §
212(c) relief.  *See* St. Cyr v. I.N.S., 229 F.3d 406, 408-09 (2d
Cir. 2000).

[4] The Illegal Immigration Reform and Immigrant
Responsibility Act of 1996 § 304(b) repealed INA § 212(c) and
replaced it with INA § 240A, codified at 8 U.S.C. § 1229(b).  New
INA § 240A consolidates "suspension of deportation" relief with
provisions of the old INA § 212(c) to create a new form of relief
called "cancellation of removal."  Notably, "cancellation of
removal" relief is available for aliens whose criminal
convictions do not qualify as "aggravated felonies."  *See* Innab
v. Reno, 204 F.3d 1318, 1319 (11th Cir. 2000)(citing IIRIRA §

1

Fee _____
Process _____
X  Dktd _____
✓  CtRmDep _____
___ Doc. No. _____

GOVERNMENT
EXHIBIT

13

Due Process Clause.  Further, Petitioner asserts that the lack of

a record during part of the proceedings violated INA §

240(b)(4)(c) and 18 U.S.C. § 2071(b) as well as his due process

rights.  Petitioner requests that his case be remanded to the BIA

for determination of his 212(c) request, and that the Court

vacate his deportation order with prejudice.

**BACKGROUND**

Petitioner, a citizen of Nigeria, entered the United States

in 1969, and in 1974 he became a lawful permanent resident.[5]  In

1980, Petitioner was convicted for the offense of Attempted

Possession of Marijuana.[6]  In 1994, Petitioner was convicted in

the United States District Court, Southern District of Texas, for

conspiracy to defraud the United States and three counts of wire

fraud.  As a result of the 1994 conviction, Petitioner was

sentenced to thirty-seven months in prison and ordered to pay

restitution in the amount of $980,000.[7]  Petitioner appealed his

conviction, which was affirmed by the Fifth Circuit on March 6,

---

304(a), codified at 8 U.S.C. § 1229(b)).

[5] Government's Response to Petition for Writ of Habeas
Corpus, Exh. "1". (Rec. Doc. 5).

[6] Government's Response to Petition for Writ of Habeas
Corpus, Exh. "3". (Rec. Doc. 5).

[7] Government's Response to Petition for Writ of Habeas
Corpus, Exh. "4". (Rec. Doc. 5).

2

1996.[8]

On or about March 14, 1996, the Immigration and
Naturalization Service, now the Department of Homeland Security,
United States Immigration and Customs Enforcement ("the
Department") served on Petitioner an order to show cause charging
Petitioner as deportable.[9]  On January 23, 1997, the Immigration
Judge ordered Petitioner's removal to Nigeria, and Petitioner
reserved his rights to appeal.[10]  On or about February 18, 1997,
Petitioner filed his Notice of Appeal with the Board of
Immigration Appeals (the "BIA").[11]

On October 30, 1998, the BIA returned the case to the
Immigration Court because either the transcript of the hearing or
the transcript of the Immigration Judge's decision was missing.

---

[8] Government's Response to Petition for Writ of Habeas
Corpus, Exh. "5". (Rec. Doc. 5).

[9] Specifically, Petitioner was charged as deportable under
the following statutes: INA § 241(a)(2)(B)(i), which allows for
deportation of an immigrant convicted of a violation of any law
or regulation relating to a controlled substance; INA §
241(a)(2)(A)(iii), which provides for deportation of an immigrant
convicted of an offense defined as an aggravated felony; INA §
241(a)(2)(A)(ii), which provides for deportation of an immigrant
convicted of two crimes involving moral turpitude not arising out
of a single scheme of criminal misconduct.  Government's Response
to Petition for Writ of Habeas Corpus, Exh. "6". (Rec. Doc. 5).

[10] Government's Response to Petition for Writ of Habeas
Corpus, Exh. "9". (Rec. Doc. 5).

[11] Government's Response to Petition for Writ of Habeas
Corpus, Exh. "10". (Rec. Doc. 5).

Because only part of the hearing could be located, the Immigration Judge conducted a full and complete set of hearings once again.[12] On September 29, 1999, the Immigration Judge issued his decision in which he found Petitioner deportable as charged and ordered Petitioner to be deported to his native country, Nigeria.[13] Petitioner appealed the decision to the BIA, and the BIA dismissed the appeal on May 12, 2000.[14] Subsequently, Petitioner filed a motion for reconsideration and for a stay of deportation in which Petitioner explained that he did not have an opportunity to file a brief.

On July 28, 2000, the BIA granted Petitioner's request for a stay pending further review and, on September 11, 2000, the BIA granted Petitioner's motion for reconsideration and reinstated his appeal.[15] On November 2, 2000, after Petitioner requested a change in his custody status, the Immigration Judge ordered that Petitioner be released upon posting a $25,000 bond. On May 5, 2003, the BIA dismissed Petitioner's reinstated appeal. The

---

[12] Government's Response to Petition for Writ of Habeas Corpus, p. 3. (Rec. Doc. 5).

[13] Government's Response to Petition for Writ of Habeas Corpus, Exh. "15". (Rec. Doc. 5).

[14] Government's Response to Petition for Writ of Habeas Corpus, Exh. "16". (Rec. Doc. 5).

[15] Government's Response to Petition for Writ of Habeas Corpus, Exh. "18". (Rec. Doc. 5).

4

BIA's dismissal decision was returned as undeliverable, and on August 11, 2003, the BIA reissued its May 5, 2003 decision.[16] Responding to the August 11, 2003 issuance, Petitioner filed a motion to reconsider in which he requested relief from deportation in the form of a waiver under INA § 212(c).[17]  On November 14, 2003, the BIA denied Petitioner's motion to reconsider after noting that Petitioner never filed an application for a waiver under Section 212(c).  Further, the BIA explained that if Petitioner had filed a 212(c) request, he would not be eligible or entitled to such relief.[18]

On November 12, 2004, Petitioner filed the petition that is presently before the Court.[19]  In his petition, Petitioner asserts that he is not deportable, and he requests relief from deportation in the form of a waiver under former Section 212(c) of the Act.[20]  The government construes Petitioner's arguments as

---

[16] Government's Response to Petition for Writ of Habeas Corpus, Exh. "21". (Rec. Doc. 5).

[17] Government's Response to Petition for Writ of Habeas Corpus, Exh. "22". (Rec. Doc. 5).

[18] Government's Response to Petition for Writ of Habeas Corpus, Exh. "22". (Rec. Doc. 5).

[19] Rec. Doc. 1.

[20] Rec. Doc. 1.

5

a request for relief from detention under *Zadvydas v. Davis*.[21]

## STANDARD OF REVIEW

Under 28 U.S.C. § 2241(c)(3), a writ of habeas corpus may extend to any person "in custody in violation of the Constitution or laws or treaties of the United States."[22] Despite comprehensive amendments to judicial review of immigration decisions through the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), federal district courts have jurisdiction to decide habeas corpus petitions filed under 28 U.S.C. § 2241 by aliens subject to deportation.[23]

However, a district court's review of administrative immigration decisions under Section 2241 is limited.[24]

> First, a district court reviews only the opinion of the [BIA] and does not review both the [BIA]'s and the Immigration Judge's opinions. Second, the standard of review is restricted to purely legal questions. Specifically, a district court may review statutory and constitutional claims as well as claims asserting the erroneous application of legal principles to undisputed

---

[21] *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491 (2001).

[22] 28 U.S.C. § 2241(c)(3); *Zadvydas*, 533 U.S. 678, 687, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).

[23] INS v. St. Cyr, 533 U.S. 289, 314, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); Chong v. Dist. Dir. INS, 264 F.3d 378, 382 (3d Cir. 2001).

[24] Gomez v. Bureau of Immigration, 315 F. Supp. 2d 630, 633 (M.D.Pa. Apr. 23, 2004).

facts.     However,   federal   jurisdiction   over   § 2241
petitions  does  not  extend  to  review  of  discretionary
determinations made by the [BIA].[25]

Thus, a district court may review only the BIA opinion, and the

court's review is limited to questions of law.  Moreover, a

district court's jurisdiction does not extend to review of

discretionary determinations made by the BIA.

**LAW**

"Section 212 of the Immigration and Nationality Act of 1952,

which replaced and roughly paralleled § 3 of the 1917 Act,

excluded from the United States several classes of aliens,

including those convicted of offenses involving moral turpitude

or the illicit traffic in narcotics.  As with the prior law, this

section was subject to a proviso granting the Attorney General

broad discretion to admit excludable aliens."[26]  Although Section

212 was literally applicable to only exclusion proceedings, the

BIA interpreted it to authorize any permanent resident alien with

a lawful domicile of seven years to apply for a discretionary

waiver from deportation.[27]

---

[25] *Id.* at 633 (citing Bakhtriger v. Elwood, 360 F.3d 414, 420)(internal citations omitted).

[26] I.N.S. v. St. Cyr, 533 U.S. 289, 294-95, 121 S.Ct. 2271, 2276 (2001).

[27] *Id.*(citing Matter of Silva, 16 I.&N.Dec.26,30, 1976 WL 32326 (1976)(adopting the position of Francis v. INS, 532 F.2d 268 (2nd Cir. 1976))).

7

The extension of § 212(c) relief to the deportation context has had great practical importance, because deportable offenses have historically been defined broadly. For example, under the INA, aliens are deportable upon conviction for two crimes of "moral turpitude" (or for one such crime if it occurred within five years of entry into the country and resulted in a jail term of at least one year). See 8 U.S.C. §§ 1227(a)(2)(A)(i)-(ii) (1994 ed., Supp. V). In 1988, Congress further specified that an alien is deportable upon conviction for any "aggravated felony," Anti-Drug Abuse Act of 1988, 102 Stat. 4469-4470, § 1227(a)(2)(A)(iii), which was defined to include numerous offenses without regard to how long ago they were committed. Thus, the class of aliens whose continued residence in this country has depended on their eligibility for § 212(c) relief is extremely large, and not surprisingly, a substantial percentage of their applications for § 212(c) relief have been granted. Consequently, in the period between 1989 and 1995 alone, § 212(c) relief was granted to over 10,000 aliens.[28]

In 1990 and 1996, Congress significantly reduced the size of the class of aliens eligible for discretionary relief. "In 1990, Congress amended § 212(c) to preclude from discretionary relief anyone convicted of an aggravated felony who had served a term of imprisonment of at least five years."[29] In 1996, Congress identified a broad set of offenses for which convictions would preclude such relief.[30] Also in 1996, Congress passed IIRIRA, which repealed INA § 212(c) and replaced it with a new section

---

[28] *Id.* at 295-96.

[29] *Id.* at 297 (citing Section 511, 104 Stat. 5052 (amending 8 U.S.C. § 1182(c))).

[30] *Id.* (citing 110 Stat. 1277(amending 8 U.S.C. § 1182(c))).

8

that gives the Attorney General the authority to cancel removal
for a narrow class of inadmissible or deportable aliens, which no
longer includes anyone previously "convicted of any aggravated
felony."[31]  Further, IIRIRA's amendment to the definition of
"aggravated felony" clearly states that it applies with respect
to "conviction[s] ... entered before, on, or after" that
statute's enactment date.[32]

### DISCUSSION

As explained above, this Court's jurisdiction is limited to
review of the BIA's opinion with respect to purely legal
questions.  As stated in the BIA's May 5, 2003 opinion,
Petitioner raised four issues on appeal.[33]  The third issue
presented to the BIA – that the Immigration Judge erred in
adopting the Service's position that AEDPA applies retroactively
to the respondent's 1994 conviction of wire fraud and conspiracy
to defraud the United States, thus barring him from relief under
Section 212(c) of the Act – is the only issue properly before
this Court.  Reviewing the BIA's opinion, the Court notes that
the BIA denied Petitioner relief under Section 212(c) for three

---

[31] *Id.* (citing § 1229b(a)(3)(1994 ed., Supp. V)).  The term
"aggravated felony" is defined in 8 U.S.C. § 1101(a)(43).

[32] *Id.* at 319.

[33] Government's Response to Petition for Writ of Habeas
Corpus, Exh. "20". (Rec. Doc. 5).

9

reasons.

First, in its May 3, 2003 decision the BIA explained that Petitioner was not entitled to 212(c) relief because he did not file the necessary application requesting such relief.[34]  On November 14, 2003, the BIA again addressed Petitioner's argument in its response to Petitioner's motion to reconsider.  Notably, the BIA explained that Petitioner's deportation proceedings were commenced on March 14, 1996 and, therefore, subsequent changes to Section 212(c), due to the enactment of AEDPA and IIRIRA, did not apply to the respondent.[35]  After reviewing the transcript of the proceedings before the Immigration Judge, the BIA found that Petitioner was provided with multiple opportunities to file for 212(c) relief, but he declined to do so.  Consequently, the BIA denied Petitioner relief under 212(c).[36]

Second, the BIA also denied Petitioner relief because his "1994 convictions resulted from a jury trial, and the Supreme Court's ruling in INS v. St. Cyr, 533 U.S. 289 (2001), is of no help to the respondent in relation to eligibility for section

---

[34] Government's Response to Petition for Writ of Habeas Corpus, Exh. "20". (Rec. Doc. 5).

[35] Government's Response to Petition for Writ of Habeas Corpus, Exh. "22". (Rec. Doc. 5).

[36] Government's Response to Petition for Writ of Habeas Corpus, Exh. "22". (Rec. Doc. 5).

10

212(c) relief."[37]  Notably, the petitioner's conviction in *St. Cyr* resulted from a guilty plea.  In *St. Cyr*, the Court explained that part of the reason why petitioner pled guilty was to preserve the possibility of relief under 212(c).[38]

Third and finally, the BIA addressed Petitioner's retroactivity claims in general and explained that the last sentence of INA § 101(a)(43) specifically makes the aggravated felony definition retroactive by providing the following language: "Notwithstanding any other provision of law (including any effective date), the term [aggravated felony] applies regardless of whether the conviction was entered before, on, or after the date of enactment of this paragraph."[39]

The BIA determined that although § 212(c) applied to Petitioner, Petitioner was not entitled to § 212(c) discretionary relief.  Thus, the BIA exercised its authority and made a *discretionary* determination that relief is not warranted.  As stated above, this Court does not have jurisdiction to review

---

[37] Government's Response to Petition for Writ of Habeas Corpus, Exh. "21", p.3. (Rec. Doc. 5).

[38] *St. Cyr*, 533 U.S. at 321-24.

[39] Government's Response to Petition for Writ of Habeas Corpus, Exh. "21", p.3. (Rec. Doc. 5).  *See* INA § 101(a)(43).

11

discretionary decisions of the BIA,[40] however, the Court may review Petitioner's constitutional claims.

With regard to Petitioner's claim that the application of AEDPA § 440(d) constitutes a violation of his due process rights, the Court notes that a similar argument was raised in *Requena-Rodriguez v. Pasquarell*.[41] In *Requena*, the Fifth Circuit explained that "Congress has the authority to make past criminal activity a new ground for deportation, and, before AEDPA, there was a strong tradition of finding that expansions of the criminal bar to § 212(c) relief had no retroactive effect."[42] "A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statutes enactment or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment."[43] The Fifth Circuit concluded that because § 440(d) has no retroactive

---

[40] *See supra*, text accompanying note 21.

[41] Requena-Rodriguez v. Pasquarell, 190 F.3d 299 (5th Cir. 1999). Again, the enactment of AEDPA § 440(d) rendered aliens convicted of aggravated felonies ineligible for relief. *See supra*, note 3.

[42] *Requena-Rodriguez*, 190 F.3d at 308.

[43] *Id.* (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269-70, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 299 (1994) (citation and footnote omitted)).

12

effect when triggered by pre-AEDPA convictions, it was proper to apply it to Requena's case.[44]

Similarly, in the instant matter the application of AEDPA § 440(d) triggered by Petitioner's pre-AEDPA conviction has no retroactive effect and, therefore, does not violate Petitioner's rights under the Due Process Clause. The same reasoning employed by the Fifth Circuit in *Requena* with respect to AEDPA § 440(d) equally applies to INA § 240A. Therefore, the application of AEDPA § 440(d) and INA § 240A to Petitioner's pre-AEDPA conduct does not violate Petitioner's rights under the Due Process Clause.

Petitioner also asserts that the lack of a record violates INA § 240(b)(4)(c) and 18 U.S.C. § 2071(b). Section 240(b)(4)(c), codified in 8 U.S.C. § 1229a(b)(4)(C), provides that a complete record shall be kept of all testimony and evidence produced at the deportation proceeding.[45] Further, 18 U.S.C. § 2071(b) provides criminal penalties for removal or destruction of records filed or deposited with any clerk or officer of any court or judicial office of the United States.[46] The BIA acknowledged that the transcript from the original

---

[44] *Id.*

[45] 8 U.S.C. § 1229a(b)(4)(C).

[46] 18 U.S.C. § 2071(b).

13

deportation proceeding was lost.[47]  As a result of the missing record, a new immigration hearing was conducted and Petitioner was again determined to be deportable.[48]  Petitioner appealed to the BIA, which upheld the immigration judge's decision.[49] Subsequently, Petitioner filed a motion for reconsideration based on the grounds that Petitioner had not received a copy of the transcript in order to properly brief the issues on appeal.  The BIA granted the motion to allow Petitioner the opportunity to brief the issues on appeal.[50]  After considering Petitioner's arguments, the BIA upheld the immigration judge's decision and found the Petitioner deportable as charged and ineligible for relief under Section 212(c).[51]

Although the transcript of the original deportation proceeding was lost, Petitioner was afforded a second hearing – in effect, *de novo* review by the immigration judge – at which Petitioner had an opportunity to present his case once again. Further, on appeal the BIA granted Petitioner's motion for

---

[47]  Government's Response to Petition for Writ of Habeas Corpus, Exh. 11 (Rec. Doc. 5).

[48] *See supra*, note 12 and accompanying text.

[49] *See supra*, note 14 and accompanying text.

[50] *See supra*, note 15 and accompanying text.

[51] *See supra*, note 17 and accompanying text.

14

reconsideration to ensure that Petitioner had sufficient time to brief the issues appealed.[52]  Consequently, there is no evidence that Petitioner's due process rights were violated because of an incomplete record.

Last, the government interprets Petitioner's habeas petition as a request for release from custody under *Zadvydas v. Davis*.[53] In *Zadvydas*, the United States Supreme Court addressed the legality of post-order detention under INA § 241(a)(6) and found that the statute permits detention for a period "reasonably necessary" to deport the alien.[54]  The presumptive "reasonable period" consists of six months, absent evidence demonstrating that deportation is likely to occur in the reasonably forseeable future beyond that time.[55]  With respect to the six month period, the Court explained that "this 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant

---

[52] *See supra*, note 15 and accompanying text.

[53] *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491 (2001).

[54] *Id.* at 682.  Specifically, the Court stated "we construe the statute to contain an implicit 'reasonable time' limitation, the application of which is subject to federal court review." *Id.*

[55] *Id.* at 701.

15

likelihood of removal in the reasonably foreseeable future."[56]   A
reasonable period of immigration detention that provides review
with the possibility of release is neither necessarily
indefinite, nor is it necessarily unconstitutional.[57]  Further,
the Fifth Circuit has held that if an alien intentionally
prevents the INS from effecting his removal, the removal period
would be equitably tolled.[58]  Thus, the period does not run while
the INS is prevented from effecting the removal or until the
alien begins to cooperate with the INS in effecting his removal.
As conceded by Petitioner, the Nigerian government is waiting to
issue Petitioner's travel documents until Petitioner has
exhausted his judicial remedies.[59]  Thus, Petitioner's habeas
petition is currently acting to prevent his removal.
Consequently, the removal period has been tolled while this
petition has been pending and Petitioner's argument under
*Zadvydas* fails.  Accordingly,

   **IT IS ORDERED** that the Petition for Habeas Corpus And
Request for Stay of Deportation should be and hereby is **DENIED**;

---

[56] *Id.*

[57] *See, e.g., Zavydas*, 533 U.S. 678.

[58] Balogun v. I.N.S., 9 F.3d 347, 351 (5th Cir. 1993).

[59] Petitioner's Motion for Preliminary Injunction, p. 4 (Rec.
Doc. 10).

16

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.


New Orleans, Louisiana this the 2__ day of March, 2005.

_____

CARL BARBIER

UNITED STATES DISTRICT COURT

17

## UNITED STATES DISTRICT COURT
## DISTRICT OF DISTRICT OF COLUMBIA

Ambrose O. Esogbue,

      Plaintiff,

     v.                           Docket No. 06-1895

Department of Homeland Security,
et al.,

      Defendants

### DECLARATION OF SCOTT A. WHITTED

1. I am a lawyer with the Department of Homeland Security, U.S. Immigration and Customs Enforcement (ICE), Office of the Principal Legal Advisor. I have held this job, first with the former Immigration and Naturalization Service, and then with its successor agency, ICE, since May 2002.

2. I am aware that the plaintiff has filed this lawsuit in which he claims that some of his personal property was lost or destroyed when he and other immigration detainees were evacuated from the Plaquemines Parish Detention Center on August 27, 2005 as Hurricane Katrina approached.

3. I have read the pertinent portions of the Immigration and Naturalization Act (INA), 8 U.S.C. §1101, et seq., and the implementing regulations in Title 8, Code of Federal Regulations. Neither the INA nor the regulations impose any mandatory duties upon ICE officials with respect to the evacuation of immigration detainees from detention facilities for any reason, including an imminent natural disaster.

4. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 3, 2007.

_Scott A. Whitted_

Scott A. Whitted, Associate Legal Advisor

GOVERNMENT
EXHIBIT
14